David R. Markham (SBN 071814)
*dmarkham@markham-law.com*
Maggie Realin (SBN 263639)
*mrealin@markham-law.com*
Lisa Brevard (SBN 323391)
*lbrevard@markham-law.com*
**THE MARKHAM LAW FIRM**
888 Prospect Street, Ste. 200
La Jolla, CA 92037
Tel.: (619) 399-3995
Fax: (619) 615-2067

Walter L. Haines (SBN 71075)
*whaines@uelglaw.com*
**UNITED EMPLOYEES LAW GROUP**
5500 Bolsa Avenue, Suite 201
Huntington Beach, CA 92649
Tel: (310) 234-5678
Fax: (310) 652-2242

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DEREK STEWART, an individual, JAVONTE WILLIAMS, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEL MONTE FOODS, INC., a Delaware Corporation; and DOES 1 through 10, inclusive,<br><br>Defendant. | CASE NO.: 3:22-CV-04919-AMO <u>CLASS, COLLECTIVE AND PAGA REPRESENTATIVE ACTION</u><br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' [UNOPPOSED] MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:    January 4, 2024<br>Time:    2:00 p.m.<br><br>District Judge: Hon. Araceli Martinez-Olguin<br><br>Complaint Filed: August 29, 2022<br>FAC Filed:  November 3, 2022<br>Trial Date: February 3, 2025 |

# TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................................................ 1

II.   FACTUAL AND PROCEDURAL BACKGROUND ............................................... 2

III.  VIGOROUS PROSECUTION OF THIS ACTION ................................................. 3

IV.  SETTLEMENT TERMS ......................................................................................... 3

    A. Settlement Relief ............................................................................................... 3

    B. Settlement Administration ................................................................................ 12

C.   Proposed Notice Plan ......................................................................................... 13

V.   THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL CRITERIA ............. 13

    A. The Proposed Class Meets the Certification Elements for Settlement Purposes .................... 14

    B. The Proposed Settlement is Fair, Adequate, and Reasonable ................................. 18

        1.   The Settlement is the Product of Serious, Informed and Noncollusive
            Negotiations................................................................................................ 18

        2.   The Settlement has no "Obvious Deficiencies" and Falls within the Approval
            Range ......................................................................................................... 19

        3.   The Settlement does not Improperly Grant Preferential Treatment to Class
            Representatives or Segments of the Class ............................................... 23

        4.   The Stage of the Proceedings is Sufficiently Advanced to Permit Preliminary
            Approval of the Settlement........................................................................ 24

VI.  THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED ........................... 24

VII. CAFA NOTICE IS REQUIRED AND WILL BE PROVIDED .................................. 25

VIII. CONCLUSION ........................................................................................................ 25

i

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

## TABLE OF AUTHORITIES

**Cases**

*7-Eleven Owners for Fair Franchising v. Southland Corp.*,
   85 Cal. App. 4th 1135 (2000) ....................................................................... 14, 20

*Adams v. Inter-Con Sec. Sys., Inc.*,
   2007 WL 3225466 (N.D. Cal. Oct. 30, 2007)............................................................ 19

*Amalgamated Transit Union Local 1309, AFL-CIO v. Laidlaw Transit Services, Inc.*,
   2009 WL 2448430 (S.D. Cal. Aug. 10, 2009) .......................................................... 11

*Amaral v. Cintas Corp. No. 2*,
   163 Cal.App.4th 1157 (2008) ........................................................................... 11

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997)...................................................................................... 14, 17

*Bellinghausen v. Tractor Supply Co.*,
   303 F.R.D. 611 (N.D. Cal. 2014) ........................................................................ 19

*Bravo v. Gale Triangle, Inc.*,
   2017 WL 708766 (C.D. Cal. Feb. 16, 2017) ........................................................... 10

*Brinker Rest. Corp. v. Super. Ct.*,
   53 Cal.4th 1004 (2012) ......................................................................... 15, 21, 22

*Cellphone Termination Fee Cases*,
   186 Cal.App.4th 1380 (2010) .......................................................................... 23

*Clark v. Am. Residential Servs.*,
   175 Cal.App.4th 785 (2009) ............................................................................ 23

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) ......................................................................... 18

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ......................................................................... 19

*Donohue v. ABN Servs., LLC*,
   11 Cal.5th 58 (2021) ...................................................................................... 21

*Durham v. Cont'l Cent. Credit, Inc.*,
   2011 WL 90253 (S.D. Cal. Jan. 10, 2011).............................................................. 24

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974)...................................................................................... 24

*Franco v. Ruiz Food Products, Inc.*,

ii

2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ............................................................ 10

*Galvan v. Superior Tank Co Inc.,*

2016 WL 11502115 (C.D. Cal. July 19, 2016) ............................................................ 7

*Glass v. UBS Fin. Servs.,*

2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................................. 19

*Gomez v. Lincare, Inc.,*

173 Cal.App.4th 508 (2009) ..................................................................................... 22

*Hammit v. Lumber Liquidators,*

19 F. Supp. 3d 989 (S.D. Cal. 2014) ......................................................................... 22

*Hanlon v. Chrysler Corp.,*

150 F.3d 1011 (9th Cir.1998) ............................................................................ 14, 15

*Hanon v. Dataproducts Corp.,*

976 F.2d 497 (9th Cir. 1992) .................................................................................... 16

*Hernandez v. Best Buy Stores, LP,*

2017 WL 2445438 (S.D. Cal. June 6, 2017) ............................................................. 11

*Hertz v. Woodbury County,*

566 F.3d 775 (8th Cir. 2009) .................................................................................... 21

*Ikonen v. Hartz Mountain Corp.,*

122 F.R.D. 258 (S.D. Cal. 1988) .............................................................................. 15

*In re Mego Fin. Corp. Sec. Litig.,*

213 F.3d 454 (9th Cir. 2000) ............................................................................... 20, 22

*In re Mercury Interactive Corp. Sec. Litig.,*

618 F.3d 988 (9th Cir. 2010) ...................................................................................... 9

*In re MyFord Touch Consumer Litig.,*

2019 WL 1411510 (N.D. Cal. Mar. 28, 2019) ............................................................ 8

*In re Syncor ERISA Litig.,*

516 F.3d 1095 (9th Cir. 2008) .................................................................................. 14

*In re Tableware Antitrust Litig.,*

484 F.Supp.2d 1078 (N.D. Cal. 2007) ...................................................................... 18

*In re TD Ameritrade Account Holder Litig.,*

2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) .......................................................... 24

*In re Wash. Public Power Supply System Sec. Litig.,*

720 F.Supp. 1379 (D. Ariz. 1989) ............................................................................ 19

iii

*Jong v. Kaiser Found. Health Plan, Inc.*,
226 Cal.App.4th 391 (2014) ............................................................................21

*Knight v. Red Door Salons, Inc.*,
2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ......................................................14

*La Sala v. American Sav. & Loan Assn.*,
5 Cal.3d 864 (1971) ........................................................................................16

*Laffitte v. Robert Half Int'l Inc.*,
1 Cal.5th 480 (2016) ..........................................................................................9

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) ...................................................................20, 24

*Low v. Trump University, LLC*,
246 F.Supp.3d 1295 (S.D. Cal. 2017)..............................................................23

*Ma v. Covidien Holding, Inc.*,
2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ......................................................8

*Maldonado v. Epsilon Plastics, Inc.*,
22 Cal.App.5th 1308 (2018) ............................................................................22

*Matter of Cont'l Ill. Sec. Litig.*,
962 F.2d 566 (7th Cir. 1992) ...........................................................................23

*Mendez v. Tween Brands, Inc.*,
2010 WL 2650571 (E.D. Cal. June 30, 2010) ..................................................12

*Milburn v. PetSmart, Inc.*,
2019 WL 5566313 (E.D. Cal. Oct. 29, 2019) .....................................................7

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950)..........................................................................................24

*Murillo v. Pac. Gas & Elec. Co.*,
266 F.R.D. 468 (E.D. Cal. 2010) .....................................................................19

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004) .....................................................................24

*Ochoa-Hernandez v. CJADERS Foods, Inc.*,
2010 WL 1340777 (N.D. Cal. Apr. 2, 2010) ...................................................12

*Officers for Justice v. Civil Serv. Comm'n of San Francisco*,
688 F.2d 615 (9th Cir. 1982) .....................................................................13, 18

*Ontiveros v. Zamora*,

iv

303 F.R.D. 356 (E.D. Cal. 2014) ......................................................................... 23

*Parsons v. Ryan,*
   754 F.3d 657 (9th Cir. 2014) ........................................................................... 16

*Radcliffe v. Experian Info. Solutions, Inc.,*
   715 F.3d 1157 (2013) ....................................................................................... 23

*Ridgeway v. Wal-Mart Stores Inc.,*
   2017 WL 4071293 (N.D. Cal., Sept. 14, 2017) ............................................... 23

*Rodriguez v. West Publ'g,*
   563 F.3d 948 (9th Cir. 2009) ........................................................................... 23

*Ross v. U.S. Bank Nat'l Ass'n,*
   2010 WL 3833922 (N.D. Cal. Sept. 29, 2010) ................................................ 23

*Sandoval v. Tharaldson Emp. Mgmt., Inc.,*
   2010 WL 2486346 (C.D. Cal. June 15, 2010) ................................................. 22

*Sav-On Drug Stores,*
   34 Cal. 4th 319 (2004) ............................................................................... 15, 18

*Schiller v. David's Bridal, Inc.,*
   2012 WL 2117001 (E.D. Cal. June 11, 2012) ................................................. 10

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) ............................................................... 14, 16, 17

*Stovall-Gusman v. W.W. Granger, Inc.,*
   2015 WL 3776765 (N.D. Cal. June 17, 2015 .................................................... 8

*Thomas v. Cognizant Technology Solutions U.S. Corp.,*
   2013 WL 12371622 (C.D. Cal. June 24, 2013) ................................................. 8

*Trang v. Turbine Engine Components Techs. Corp.,*
   2012 WL 6618854 (C.D. Cal. Dec. 19, 2012) ................................................. 11

*Troester v. Starbucks Corp.,*
   5 Cal. 5th 829 (2018) ...................................................................................... 21

*True v. American Honda Motor Co.,*
   749 F.Supp.2d 1052 (C.D. Cal. 2010) ........................................................ 15, 17

*Valentino v. Carter-Wallace, Inc.,*
   97 F.3d 1227 (9th Cir. 1996) ........................................................................... 17

*Vasquez v. Coast Valley Roofing, Inc.,*
   266 F.R.D. 482 (E.D. Cal. 2010) ....................................................................... 9

v

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

*Villegas v. J.P Morgan Chase & Co*.,
   2012 WL 5878390 (N.D. Cal. Nov. 21, 2012) ..................................................................20

*Wal-Mart Stores, Inc. v. Dukes*,
   131 S.Ct. 2541 (2011)...................................................................................15, 16, 17

*Williams v. Superior Court*,
   221 Cal.App.4th 1353 (2013) ..........................................................................................20

*Young v. Polo Retail, LLC,*
   2007 WL 951821 (N.D. Cal. Mar. 28, 2007).................................................................24

**Other Authorities**

4 Newberg on Class Actions, § 11.41 (4th ed. 2002)........................................................14

Manual for Complex Litigation, Fourth, § 21.632 (2004) ............................................14, 24

Manual for Complex Litigation, Second, §30.44 (1985) ....................................................18

Moore's Federal Practice, 23.165[3] (3d ed. 2005).........................................................14

**Rules**

Fed. R. Civ. P. 23 .................................................................................................1, 15, 18

vi

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

# I.    INTRODUCTION

Plaintiffs Derek Stewart and Javonte Williams seek preliminary approval under Federal Rule 23(e) of a $2,000,000 Class Settlement on behalf of approximately 4,573 current and former non-exempt production employees of Defendant Del Monte, Inc., in California between August 29, 2018 and the order granting preliminary approval, or November 26, 2023 (the "Class Period").[1]

This is a non-reversionary[2] cash settlement and all Class Members who do not opt out will receive a payment, without a requirement to submit a claim form. Plaintiffs allege that they and other class members were not provided timely and uninterrupted meal and rest periods, nor paid premium payments at the correct rate for all non-complying breaks, were not paid all wages owed, including overtime, incurred unreimbursed work expenses, and other derivative claims.

This case was resolved with the assistance of an experienced mediator, Louis Marlin, Esq. Plaintiffs argue Del Monte's maximum realistic liability for their direct overtime, meal and rest break, and unreimbursed expense claims is $11,776,885, and $13,790,010 for all their claims, including derivative wage statement and waiting time penalty claims. This assumes Plaintiffs would prevail on their claims that they and other class members worked 15 minutes of unpaid overtime on approximately half of their shifts, experienced meal break violations on 64% of shifts (based on the facial violation rate for the class sample), experienced rest break violations on approximately half of their shifts, and incurred approximately $25 in unreimbursed safety equipment costs per employee, with a discount applied to account for the substantial risks both on the merits and to certification, as explained in Section IV(3), *supra*.

The $2,000,000 Settlement Amount represents 17% of Del Monte's maximum realistic liability for unpaid wages, meal and rest break violations, and unreimbursed expenses, and nearly 15% (14.5%) of Del Monte's maximum realistic liability for all of Plaintiffs' claims, including derivative claims. This is an excellent result, well in range – or exceeding, the settlements

---

[1] In the event the unique workweeks exceed 304,074, on Defendant's election, the class period end date would be the date for which the workweeks do not trigger the escalation clause. Settlement Agreement, ¶¶1.12, 9.

[2] The class and representative action funds would <u>not</u> revert to Defendant under any circumstances. If any of the $50,000 FLSA allocation payments remain uncashed, they would be returned to Defendant, because Del Monte would not receive a FLSA release for those individuals. Settlement Agreement, ¶¶1.20, 3.1, 3.2.5.

1

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

commonly approved by California federal and state courts, especially considering that Plaintiffs risked complete dismissal of their class, collective and representative claims based on the Collective Bargaining Agreement ("CBA") through Defendant's pending motion to compel arbitration.

Plaintiffs seek an order: (1) preliminarily approving the proposed Settlement; (2) approving the form and content of the Class Notice; (3) directing that Class Notice be given to Class Members; (4) provisionally certifying the Settlement Class and appointing Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel; (5) preliminarily approving Settlement administration services to be provided by the Settlement Administrator, and; (6) scheduling a Fairness Hearing.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Del Monte employs class members whose job duties include maintaining and operating Defendant's production lines. Declaration of David R. Markham ("Markham Decl."), ¶2. Plaintiffs work(ed) for Del Monte at its Hanford facility; Stewart as a Maintenance Mechanic, and Williams as an Evaporation Controller. *Id.* at ¶2. While Plaintiffs worked 8-hour shifts, 5 days a week, during the non-peak season, during peak summer season, Plaintiffs worked 12-hour shifts, often 7 days per week, and up to 100 or 120 days in a row. *Id.*

Plaintiffs brought this action on August 29, 2022, alleging that production line employees were not compensated for all time worked, including overtime for time worked during meal periods, and were not provided uninterrupted meal and rest periods due to the need to carry radios and respond to repairs on the production line. Further, Plaintiffs alleged that Defendant required class members to work seven days per week during the peak season, without proper compensation. Additionally, Plaintiffs alleged that they and other production employees incurred unreimbursed supply equipment expenses. *Id.,* ¶3. Plaintiffs further alleged derivative claims stemming from Plaintiffs' primary unpaid wage and meal and rest break claims, including violation of Labor Code section 226(a) for inaccurate wage statements and Labor Code section 203 for waiting time penalties, and violations of PAGA (alleged in an amended complaint dated July 24, 2023) and UCL under the same predicate factual and legal theories. *Id.,* ¶4.

The parties agreed to Plaintiffs' filing of a Second Amended Complaint ("SAC"), which clarifies the settlement class definition covers all non-exempt production employees and alleges that

2

failure to properly compensate wages includes failure to pay reporting time or "show up" pay, and all wages at the correct rate of pay. All claims released in the Settlement are alleged in the SAC. *Id.*, ¶5.

Defendant disputes these allegations and asserts that representative claims must be dismissed based on the CBA, which was critical in Plaintiffs' evaluation of the settlement value of this case.

### III.   VIGOROUS PROSECUTION OF THIS ACTION

Class Counsel has vigorously advanced Plaintiffs' position and thoroughly investigated Class Members' claims. Before mediation, the Parties engaged in discovery. Plaintiffs' counsel reviewed hundreds of pages of documents including the CBA and class data. Plaintiffs' expert analyzed a sample of time and payroll records and prepared a damages model in advance of mediation. *Id*, ¶6.

The parties carefully investigated the claims and facts alleged in this action and have made a thorough study of the legal principles applicable to the claims asserted against Del Monte. As a result of Class Counsel's investigation of the claims in this action, the expert's damages analysis, a careful review of the applicable policy and operative documents, and an informal exchange of discovery and information, the parties had a clear understanding of their respective claims and defenses. *Id.*, ¶7.

The parties settled this case with the assistance of an experienced mediator, Louis Marlin, Esq. The mediation took place on August 2, 2023. At the conclusion of mediation, the parties reached the settlement in principle. After additional weeks of arms'-length negotiations, the parties finalized the terms of the Settlement, which is attached as **Exhibit 1** to Markham Declaration.[3]

### IV.   SETTLEMENT TERMS

#### A.  Settlement Relief

The Settlement Class is defined as "[a]ll current or former non-exempt production persons employed by Defendant in California during the Class Period, who do not opt out of the Settlement." Settlement Agreement, ¶1.5.  The Class Period is from August 29, 2018 to the date of preliminary approval, or November 26, 2023. *Id.*, ¶1.12.[4]

---

[3] The Settlement Agreement was submitted to the LWDA concurrent to the filing of this motion. Markham Decl., **Ex. 2** (proof of submission).
[4] *See* footnote 1.

3

1   The Settlement Amount is $2,000,000. *Id.*, ¶1.29. This amount includes payments to Class

2   Members, attorneys' fees and costs, $60,000 allocated as PAGA penalties, of which 25% (or

3   $15,000) shall be paid to aggrieved employees and 75% (or $45,000) to the LWDA, the FLSA

4   payment of $50,000, the Class Representatives' Service Payments, and administration costs. *Id.*

5   Notably, Del Monte will pay the employer's portion of the payroll taxes in addition to the

6   Maximum Settlement Amount. *Id.*

7            **1.    *Net Settlement Amount.***

8        From the Settlement Amount, administration costs, attorneys' fees and costs, the LWDA's

9   share of PAGA penalties, and the Service Payments to the Class Representatives - as the Court

10  awards and in the proposed amount discussed below - will first be deducted, to result in a Net

11  Settlement Amount, which is approximately $1,207,063.40. *See* Settlement Agreement, ¶1.35. The

12  Net Settlement Amount will then be distributed as follows:

13           **2.    *Settlement Formula and Distribution***

14       Class Members who do not opt out of the Settlement will receive Individual Settlement

15  Payments from the Net Settlement Amount based on the number of workweeks they worked as

16  members of the putative class during the Settlement Class Period. *Id.*, ¶¶1.30.  Distribution amounts

17  will be calculated and allocated as follows:

18  $$\frac{\text{Workweeks Worked by Class Member}}{\text{Total Workweeks Worked by all Class Members}} \quad X \quad \text{Net Settlement Amount} \quad = \quad \text{Class Member's Payment}$$

20  *Id.*

21       This is a non-reversionary cash Settlement (with the exception of uncashed checks remaining

22  from the $50,000 FLSA allocation, as discussed above) and Class Members need not submit a claim

23  form to receive a payment. *Id.*, ¶3.1. Class Members who do not opt out of the Settlement will

24  release Del Monte from all claims that relate to the causes of action asserted in this action – or that

25  those that could have been asserted in this action based on the facts alleged in Plaintiffs' SAC. *Id.*,

26  ¶¶5.2-5.4.

27       Settlement checks will be valid for 180 calendar days. *Id.*, ¶4.3.1. After that time, the Parties

28  propose that the funds represented by uncashed checks (with the exception of those related to the

4

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

FLSA allocation as noted above) be tendered to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 *et seq.*, for the benefit of those Class Members who did not cash their checks, until such time that they claim their property, in compliance with Code of Civil Procedure section 384(b), and subject to the Court's approval. *Id.*, ¶4.3.3.

All Settlement payments are subject to taxation and will be reported to the IRS and state tax authorities. Twenty-five percent (25%) of each Class Member's Individual Settlement Payment will be allocated as wages, and seventy-five percent (75%) as non-wages (penalties and interest), with withholding to apply only to the portion allocated to wages. *Id.*, ¶3.2.4.1. Settlement Class Members shall seek their own tax advice regarding this Agreement. *Id.*

### 3. *Settlement Amount Calculations (Kullar analysis)*

The Settlement Amount of $2,000,000 derives primarily from: (a) Plaintiffs' meal and rest break claims including allegations that class members were constantly interrupted (and interruptible) to respond to radio calls during breaks; (b) unpaid wages, including for off-the-clock work before and after their shifts and during meal periods, and for failure to pay overtime at the correct rate during peak season when class members worked without a day of rest; and (c) unreimbursed replacement supply equipment expenses. Markham Decl., ¶10. Del Monte produced time records and payroll data for a sample of class members. Plaintiffs also received documents including the CBA and Defendant's policies. *Id.*, ¶6. The parties' exchange of information revealed there are 4,573 class members who worked 281,550 workweeks during the class period, for an average of 5 but sometimes up to 7 shifts per week (during peak season) and an average of 9.5 hours per shift. *Id.*, ¶11. Based on information provided from Defendant, the Class Members' average hourly rate is $29.85 ($44.78 overtime rate). Approximately 446 employees left employment during the relevant time period. *Id.*, ¶12. Based on the information collected, Plaintiffs calculated Del Monte's maximum potential exposure to be as follows:

Meal break claim: $26,893,656. This is based on Plaintiffs' expert's findings from the class data sample that 64% of shifts over 5 hours and/or 10 hours appeared to be potential exceptions (identified as a short, late and/or missing meal period in the time records): 281,550 total workweeks

5

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

* 3.2 shifts (5 shifts per week on average * 64% violation rate) * $29.85 average hourly rate = $26,893,656 maximum potential exposure, before accounting for Del Monte's defenses.

Unpaid Wages: $7,879,880.60. This includes Plaintiffs' claims that they and other production employees worked off the clock before and after their shifts, and during their meal periods, resulting in unpaid overtime wages (in addition to the premiums owed above), and occasionally were required to report for work without receiving pay for all their show-up time. This calculation assumes that class members had an average of 15 minutes of unpaid time (0.25 hours), on an average of 2.5 shifts (or approximately half of their shifts) per week, based on 281,550 workweeks calculated at an overtime rate of $44.78. The total maximum potential exposure for the unpaid overtime wages is $7,879,880.60, before accounting for Del Monte's defenses. [5]

Violation of Day of Rest Law: $2,985,900. Plaintiffs also calculate that Del Monte penalties under Labor Code section 558 would be assessed during peak season due to violations of the rest period law, when production employees worked seven days in a row without rest (approximately 29,859 pay periods during the peak (summer) season within a one-year time period * $100 penalty). Thus, the total maximum exposure for this claim is $2,985,900, before accounting for Del Monte's defenses.

Rest break claim: $21,010,668. This claim is based on the allegation that Plaintiffs and Class Members were interrupted with work-related calls for emergency production line issues during their rest breaks. Plaintiffs estimate that 50% of the time class members were not able to take one or more rest breaks uninterrupted. There were 281,550 workweeks x 2.5 shifts per week (approximately 50% violation rate) x $29.85 per hour results in maximum potential exposure of $21,010,668 in unpaid rest break premiums, before accounting for Del Monte's defenses.

Unreimbursed equipment expenses: $114,325. Plaintiffs assert that periodically class members were required to furnish/replace their own safety equipment. Plaintiffs estimate that each class

---

[5] Plaintiffs also allege claims under the Fair Labor Standards Act ("FLSA") for overtime pay, which are duplicative of the calculation above. Plaintiffs also do not assign a separate violation for reporting time pay violations as discovery revealed that class members worked on average 9.5-hour (rather than short shifts after being sent home), and the CBA provides for reporting time pay. Markham Decl., ¶13; **Exhibit 3**.

6

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

member is entitled to approximately $25 on average to cover a purchase of replacement safety equipment, for example replacement safety glasses, during their employment. This estimate is realistic because several class members worked as seasonal/temporary employees, and may have incurred additional safety equipment cots, if at all, over a very short time of employment. On this basis, the maximum potential exposure is $<u>114,325</u> (4,573 employees * $25), before accounting for Del Monte's defenses.

<u>Wage statement penalties</u>: $<u>5,971,750</u>. Plaintiffs calculate maximum potential exposure of $<u>5,971,750</u> for Plaintiffs' wage statement claims, before accounting for Del Monte's defenses. This is based on the $50 per pay period for initial and subsequent violations under *Amaral v. Cintas Corp. No. 2*, 163 Cal.App.4th 1157, 1207–09 (2008), for approximately 119,435 pay periods during the applicable 1-year statute of limitations. Markham Decl., ¶12.

<u>Waiting time penalties</u>: $<u>4,093,878.60</u>. Plaintiffs calculate daily wages for approximately 446 former employees during the relevant time period, multiplied by the daily pay rate of approximately $305.97 (9.5 average hour shift length (8 hours at $29.85 hourly rate and 1.5 hours at $44.78 overtime rate)) times 30 days, to arrive at maximum potential exposure of $<u>4,093,878.60,</u> before accounting for Del Monte's defenses. *Id.*, ¶12

Thus, Del Monte's potential maximum liability for Plaintiffs' direct claims is $58,884,429.60, and an additional $10,065,628.60 for Plaintiffs' derivative claims, possible only if Plaintiffs prevailed on their underlying claims. Thus, the Settlement Amount of $2,000,000 represents 3.4% potential **maximum** liability for Plaintiffs' overtime, meal and rest break, and unreimbursed expenses claims, and nearly 3% of Del Monte's maximum potential liability for all of Plaintiffs' claims. *Id.*, ¶¶12-14.

Settlements are routinely approved as fair and reasonable when the maximum valuation is discounted by fifty percent, or more, to account for the class certification and merits risks. *See e.g., Milburn v. PetSmart, Inc.*, 2019 WL 5566313 *4 (E.D. Cal. Oct. 29, 2019) (approving settlement as fair and reasonable where plaintiff applied **forty to fifty percent discount <u>each</u> for class certification and risks on the merits**); *see also Galvan v. Superior Tank Co Inc.*, 2016 WL 11502115 *7 (C.D. Cal. July 19, 2016) (approving settlement as fair and reasonable where

7

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

maximum valuation was discounted for the risk of non-certification, *i.e.* **the rest period claim was discounted by 85% for a risk of non-certification and by 65% on the merits**); *Thomas v. Cognizant Technology Solutions U.S. Corp*., 2013 WL 12371622 *6 (C.D. Cal. June 24, 2013) (concluding that settlement between 4 and 5.5% of maximum liability was fair and reasonable, which included a forty percent discount applied to account for risks to class certification); *Stovall-Gusman v. W.W. Granger, Inc*., 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) (granting final approval where total settlement amount represented approximately 10% of potential value, and recognizing the risk to maintaining class certification throughout the litigation due to individualized issues); *Ma v. Covidien Holding, Inc*., 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (granting preliminary approval of settlement for 9.1% as within "range of reasonableness" and recognizing the strength of "arguments that employees were given the opportunity to take breaks and employees were not improperly pressured to forego them. Furthermore, there would be significant risks that the class could not remain certified…").

Courts have recognized that merits and certification risks often support a substantial discount to the maximum exposure valuation:

> …[T]here are several deficiencies in Plaintiffs' case that could jeopardize their recovery at trial. In such circumstances, courts have approved settlements below the 10% threshold that reflect the plaintiffs' judgment that "a deeply discounted recovery is better than the substantial likelihood of recovering nothing." *Viceral v. Mistras Grp., Inc*., No. 15-CV-02198-EMC, 2016 WL 5907869, at *8 (N.D. Cal. Oct. 11, 2016). See, e.g., id. at *7 (approving settlement representing 8.1% of the full verdict value in recognition of the "daunting" risks plaintiffs faced in proving their case); *In re Uber FCRA Litig*., No. 14-CV-05200-EMC, 2017 WL 2806698, at *7 (N.D. Cal. June 29, 2017) (approving a settlement worth less than 7.5% of the possible verdict where the class faced "substantial risks and obstacles" to prevailing at trial, as well as "the inevitable expense of litigating a large, complex case through trial"); *Balderas v. Massage Envy Franchising, LLC*, No. 12-CV-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (approving a settlement representing 5% of the maximum recovery in light of "the strengths of plaintiff's case and the risks and expense of continued litigation").

*In re MyFord Touch Consumer Litigation*, 2019 WL 1411510 *10 (N.D. Cal. Mar. 28, 2019).

Here, when first applying a 50% discount to account for the certification risks and an additional 40% discount to account for merits risks – primarily Defendant's pending motion to dismiss class claims and compel arbitration based on the CBA, the realistic potential valuation for

8

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

Plaintiffs' direct claims is **$11,776,885** and **$13,790,010** for all of Plaintiffs' claims. The settlement value represents **17%** of the realistic potential valuation for Plaintiffs' direct claims, and nearly **15% (14.5%)** for all of Plaintiffs' claims.

This is an excellent result, well in the range of – or exceeding – settlements commonly approved by California district and state courts. *Id. See also* section V(C)(2) below for a detailed explanation.

### 4. *Attorneys' Fees and Costs*

The parties agreed that, subject to approval by the Court, up to $666,666.67, or 33.33% of the Settlement Amount, may be allocated to pay attorneys' fees, and up to $20,000 may be allocated to reimburse Class Counsel for documented out-of-pocket litigation costs. Settlement Agreement, ¶1.7. Courts in California wage and hour cases, where the common fund is under $10 million, tend to award attorneys' fees in the 30% - 40% range. *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing to five wage and hour class actions where courts approved fee awards ranging from 30 to 33%). The trial court has discretion to award attorneys' fees based on either the lodestar/multiplier calculation or the percentage-of-recovery method. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal.5th 480, 503 (2016). Class Counsel intends to brief the fee application using both methodologies, as cross checks.[6] Class Counsel's concurrently filed declaration includes information regarding hours spent to-date in this action, and lodestar through preliminary approval, which Class Counsel will later supplement. Markham Decl., ¶¶42-46. Any portion of the requested attorneys' fees and costs not awarded to Class Counsel shall be part of the Net Settlement Amount and shall be distributed to Settlement Class Members as provided in the Agreement. Settlement Agreement, ¶3.2.2.

### 5. *PAGA Payment to Labor Workforce Development Agency*

The Parties agreed that $60,000 (or 3%) of the Maximum Settlement Amount will be allocated for payment under the PAGA. 75% of this amount ($45,000) will be paid to the LWDA, and 25%

---

[6] Under *In re Mercury Interactive Corp. Securities Litigation,* 618 F.3d 988, 993 (9th Cir. 2010), Plaintiffs will file their application for attorneys' fees, costs and Plaintiffs' service payments before the due date for objections. Pursuant to Northern District local rules, Plaintiffs intend to file their motion at least 35 days prior to expiration of the objection period (or 10 days after notice is mailed).

9

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

($15,000) to Settlement Class Members. *Id.*, ¶3.2.6. This amount is in the range of the PAGA penalties typically awarded as part of class action settlements. *See Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ($10,000 as PAGA penalties found reasonable); *Franco v. Ruiz Food Products, Inc.*, 2012 WL 5941801, at *14 (E.D. Cal. Nov. 27, 2012) (approving PAGA penalties of $10,000 and noting that amount was in line with settlement approval of PAGA awards in other cases.); *Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *14 (E.D. Cal. June 11, 2012) ($7,500 to LWDA reasonable).

Plaintiffs calculated that the **maximum** exposure for the PAGA claim, which is based on a maximum of $100 in penalties every pay period, stacked once to account for recovery for every pay period on two of Plaintiffs' direct claims, (119,435 pay periods x $100 x 2)[7] = $23,887,000. Markham Decl., ¶16.

Thus, the settled amount of $60,000 in PAGA penalties represents .25% of the maximum PAGA penalties. This allocation falls within the range of other approved PAGA settlements, as courts frequently approve PAGA awards between 0.2% to 2.2% of the total potential penalties, particularly where, as here, the risks of dismissal of the case are substantial. *See Carrington v. Starbucks Corp.*, 30 Cal. App. 5th 504, 528 (2018) (awarding PAGA penalties of 0.2% of the maximum, or $5 per pay period); *Ruch v. AM Retail Grp., Inc.*, 2016 WL 5462451, at *2, 7 (N.D. Cal. Sept. 28, 2016) (settlement allocating $10,000 to PAGA penalties where potential value was over $5.2 million, resulting in 0.2 percent PAGA recovery approved); *Van Kempen v. Matheson Tri-Gas, Inc.*, 2017 WL 3670787, at *10 (N.D. Cal. Aug. 25, 2017) (granting final approval of $5,000 PAGA penalty from $370,000 settlement, or 1.4 percent); *Slavkov v. Fast Water Heater Partners I, LP*, 2017 WL 3834873, at *2 (N.D. Cal. July 25, 2017) (finding that "$7,500 PAGA payment is reasonable when measured against the total overall settlement [of $345,000] and the possible weaknesses in Plaintiffs' case," or 2.2 percent); *Bravo v. Gale Triangle, Inc.*, 2017 WL 708766, at *19 (C.D. Cal. Feb. 16, 2017) ($10,000 as PAGA penalties found reasonable).

---

[7] Plaintiffs' unreimbursed business expenses claim is not included in this calculation because the estimated expenditures occurred sporadically, not every pay period. Further, Plaintiffs stack the penalties once in calculating maximum exposure based on the substantial risks. Markham Decl., ¶17.

10

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

1    Regarding the method used to calculate PAGA penalties, the subsequent penalties in each pay

2    period are calculated at $100, not $200 per pay period, because under *Amaral v. Cintas Corp. No. 2,*

3    163 Cal.App.4th 1157 (2008), for a plaintiff to recover $200 per subsequent violation, an employer

4    must have been cited first, which has not occurred here. *Id.* at 1207-09; *see also Hernandez v. Best*

5    *Buy Stores, LP*, 2017 WL 2445438, 2 (S.D. Cal. June 6, 2017) (holding, based on *Amaral,* that $100

6    penalty per pay period is warranted because "no court, commissioner, or any other authority had

7    held [that] Best Buy misclassified the general managers."); *Trang v. Turbine Engine Components*

8    *Technologies Corp.,* 2012 WL 6618854, *5 (C.D. Cal. Dec. 19, 2012) ("courts have held that

9    employers are not subject to heightened penalties for subsequent violations unless and until a court

10   or commissioner notifies the employer that it is in violation of the Labor Code"); *Amalgamated*

11   *Transit Union Local* 1309, *AFL-CIO v. Laidlaw Transit Services, Inc.,* 2009 WL 2448430 at *9

12   (S.D. Cal. Aug. 10, 2009) (finding that California law imposes the "subsequent violation penalty"

13   only after an employer has been notified by "the court or commissioner" that its conduct violates the

14   Labor Code).

15   Further, here, Defendant could argue that under Labor Code section 558, certain penalties

16   should actually be $50 per violation instead of $100, because although Plaintiffs seek penalties

17   through PAGA, PAGA provides the applicable civil penalty only if a particular Labor Code

18   provision does not specify one. *Villacres v. ABM Indus. Inc*., 189 Cal. App. 4th 562, 580 (2010).

19   Here, meal and rest break premiums are wages, so section 226.7 does not contain a penalty, and the

20   penalty under section 558 should be applied, as it applies to unpaid wages. *Culley v. Lincare, Inc*.,

21   236 F.Supp.3d 1184, 1195 (E.D. Cal. 2017). Failure to pay overtime is also subject to the $50 civil

22   penalty provided in section 558, because section 558 applies to the penalties contained in the same

23   chapter as section 510. *Villacres*, *supra*, 189 Cal.App. at 580.

24   Additionally, courts have **wide latitude** to reduce the amount of civil penalties "based on the

25   facts and circumstances of a particular case" when "to do otherwise would result in an award that is

26   unjust, arbitrary and oppressive, or confiscatory." Cal. Lab. Code § 2699(e). Further, it is unlikely

27   the Court would award full penalties as there is little guidance as to the standard for determining the

28   amount of appropriate penalties under PAGA. *Amaral, supra*, 163 Cal. App. 4th at 1213 (internal

11

quotations omitted); *see also Fleming v. Covidien Inc.*, 2011 WL 7563047, at *4 (C.D. Cal. Aug. 12, 2011). For instance, in *Carrington, supra,* 30 Cal.App.5th, the Court of Appeal affirmed a trial court's award of only $5 in penalties per pay period, despite finding defendant liable for meal break violations. *Id.* at 522-25, 529. Here, such reduction would amount to an award of $597,175 in PAGA penalties (119,435 pay periods times $5), which is less than 10 times the <u>total</u> amount the Parties allocated to the PAGA portion of the settlement here. Markham Decl., ¶18.

This conforms to the courts' reasoning that "[t]he remedy sought in a PAGA suit consists of civil penalties, not individual or class damages" [*Mendez v. Tween Brands, Inc.*, 2010 WL 2650571, at *4 (E.D. Cal. June 30, 2010)], and in PAGA "[u]nlike class actions, these civil penalties are not to compensate unnamed employees because the action is fundamentally a law enforcement action." *See Ochoa-Hernandez v. CJADERS Foods, Inc.*, 2010 WL 1340777, at *4 (N.D. Cal. Apr. 2, 2010).

### 6. *Settlement Administration Costs*

The parties selected Simpluris, Inc. as the Settlement Administrator. Settlement Agreement, ¶1.2; *see also* Declaration of Eric Springer on behalf of Simpluris, Inc. Simpluris has years of experience in the field of class action administration, and maintains robust security measures in data management and retention. Springer Decl., ¶¶5-6, Ex. A. Counsel obtained bids from three administrators, and Simpluris' bid was most competitive. Markham Decl., ¶19. The costs of the Administrator, estimated at $31,270, will be deducted from the Settlement Amount. Settlement Agreement, ¶3.2.3.

### 7. *Class Representatives' Service Payments*

Del Monte agreed, subject to Court approval, to pay up to $15,000 from the Settlement Amount each to Stewart and Williams for their services as Class Representatives. Settlement Agreement, ¶1.15; Section V(C)(3) below. Any portion of the requested Service Payments not awarded to the Class Representatives shall be part of the Net Settlement Amount, to be distributed to Settlement Class Members. *Id.*, ¶3.2.1.

### B. Settlement Administration

Among the customary duties of the Settlement Administrator, Simpluris will send the Class Notice, in both English and Spanish, to each Class Member as provided in this Settlement,

12

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

determine the eligibility for, and the amounts of, any Individual Settlement Payments, process and distribute Class Members' payments, and process and mail tax payments to the appropriate state and federal taxing authorities. Springer Decl., ¶8. Further, Class Members will also be able to contact the Settlement Administrator by telephone or e-mail, or access the settlement website,[8] if they have any Settlement questions or need assistance. *See* Class Notice, attached as **Exhibit A** to the Settlement Agreement. Also, any opt-outs from the Settlement must be delivered to the Settlement Administrator. Settlement Agreement, ¶8.5.1.

### C.  Proposed Notice Plan

Within 30 calendar days after the preliminary approval, the Settlement Administrator will send the Class Notice to Settlement Class Members via first class mail. *Id.*, ¶4.3.1. Before mailing the Notice, the Settlement Administrator will run a check of the Class Members' addresses against those contained in the USPS's National Change of Address database, and take any other appropriate steps to validate the correctness of the addresses provided by the Defendant. *Id*. If the Notice is returned with a forwarding address, the Settlement Administrator will use the forwarding addresses to locate the missing Class Members, and re-mail the Notice to the correct address. *Id*., ¶4.3.2. For Notices remailed after being returned as non-deliverable, Class Members will have 14 additional calendar days to opt out from or object to the Settlement. *Id*., ¶8.4.2. The Settlement Administrator will use all appropriate tracing methods to ensure that the Class Notice is received by all Settlement Class Members.  *Id*.

Because this is the California-only class, and the mailing will occur only in California, 45 days to opt out from or object to the Settlement is sufficient. Markham Decl., ¶19. Class Members will also be able to opt out of the Settlement via facsimile and email. Settlement Agreement, ¶1.52.

### V.     THE SETTLEMENT SATISFIES THE PRELIMINARY APPROVAL CRITERIA

A class action may not be settled without court approval. Fed. R. Civ. P. 23(e). However, there is a strong judicial preference for pre-trial settlement of complex class actions. *Officers for Justice v. Civil Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982); *In re Syncor ERISA Litig.*,

---

[8] The website will contain settlement-related documents, including the attorney fee motion when filed, and notice of final judgment.

13

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

516 F.3d 1095, 1101 (9th Cir. 2008). In determining whether to preliminarily approve a settlement, the court should evaluate the fairness of the settlement in its entirety. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir.1998). In contemplating the preliminary approval of a proposed settlement, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, No. 08-01520, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009). The trial judge exercises discretion in deciding whether to grant preliminary approval of a class action settlement and "great weight is accorded to [the] judge's views." *7-Eleven Owners for Fair Franchising v. Southland Corp*., 85 Cal. App. 4th 1135, 1145 (2000).

Preliminary approval is the first of three steps of the settlement approval process. Second is the dissemination of a settlement notice to all class members. Third is a final approval hearing, where the evidence concerning the fairness, adequacy, and reasonableness of the settlement may be presented, and class members may be heard regarding the Settlement. *See* Manual for Complex Litigation, Fourth, § 21.632 (2004). The court does not need to perform a final analysis of the settlement's fairness to preliminarily approve a proposed settlement. Rather, a more detailed assessment is reserved for the final approval hearing, after class notice has been sent and class members have had the opportunity to object to or opt-out of the settlement. *See* Moore's Federal Practice, 23.165[3] (3d ed. 2005). Generally, there is an initial presumption of fairness when a proposed settlement, which was negotiated at arms'-length by Class counsel, is presented for court approval. 4 Newberg on Class Actions, § 11.41, p. 90 (4th ed. 2002). In approving a settlement where the class has not yet been certified, the court must first determine that a class exists. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003), citing *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613, 619-20 (1997) (commonality must be shown at a preliminary approval stage, although not necessarily manageability). Then, the Court should examine the settlement as a whole to determine if it is fair, adequate and reasonable. *Id.*, *Hanlon, supra,* 150 F.3d at 1019.

### A. The Proposed Class Meets the Certification Elements for Settlement Purposes

A proposed class may be certified for settlement purposes if it satisfies the requirements of Rule 23(a), namely: "(1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation." *Hanlon*, 150 F.3d at 1019 (citing *Amchem*, 521 U.S. at 613). Then, a plaintiff must

14

satisfy one of the prongs of Rule 23(b). *True v. American Honda Motor Co.*, 749 F.Supp.2d 1052, 1062 (C.D. Cal. 2010).) The Parties in this case request certification of the Settlement Class under Rule 23(b)(3). [9] The Class meets all standards for conditional certification:

1. <u>*An Ascertainable and Numerous Class Exists that can be Determined from Payroll Records*</u>

Rule 23(a)(1) requires "the class is so numerous that joinder of all members is impracticable." Generally, "classes of 40 or more are numerous enough" to satisfy this requirement. *Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988). Here, the Class is composed of approximately 4,573 employees who can be identified and located from Del Monte's personnel and payroll records. Del Monte will provide the Settlement Administrator with a database with all Class Members' names and contact information, and further steps will be taken to locate the Class Members for whom the addresses are not current. Settlement Agreement, ¶4.3.2; *see also* Section IV(C). Numerosity is satisfied.

2. <u>*Common Issues of Law and Fact*</u>

To certify a class, there must be "questions of law or fact common to the class." Fed. R. Civ. Proc. 23(a)(2).) The Ninth Circuit construes "the requirements of Rule 23(a)(2) . . .permissively." *Hanlon*, 150 F.3d at 1019. To satisfy commonality, even a single common question is sufficient. *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2556 (2011). "As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages." *Brinker Rest. Corp. v. Super. Ct.*, 53 Cal.4th 1004, 1022 (2012). The court only determines whether or not "the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment." *Sav-On Drug Stores*, 34 Cal. 4th 319, 327 (2004).

Here, as Class Counsel's concurrently filed declaration further shows, there are common questions of law and fact that apply to Class Members across the board, because all Class Members were subject to Del Monte's CBA, rules and polices regarding timekeeping, expense reimbursement and meal and rest breaks. Markham Decl., ¶¶3-7. Those common questions predominate over any

---

[9] Defendant agrees to certify a class for settlement purposes only, and their agreement to do so shall not be construed as an admission of the propriety of class certification outside of the settlement context. Settlement Agreement, ¶13.1.

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

individual inquiries, in that "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 131 S.Ct. at 2551. Those questions include: (i) Whether or not Class Members were paid for all hours worked and were provided with meal and rest breaks; (ii) Whether or not Class Members worked seven days per week without a day of rest during the peak season (iii) Whether or not Class Members were reimbursed for all work expenses, including for replacement safety equipment; (iv) Whether or not Class Members were provided with all wages due upon separation under Labor Code section 203; (v) Whether or not Class Members were provided with accurate wage statements; and (vi) Whether or not Del Monte engaged in unfair business practices in violation of the UCL. Thus, commonality is met.

### 3.   *Plaintiffs' Claims are Typical of the Claims of Class Members*

Typicality does not mean that the interests of representative plaintiffs must be identical to those of the absent class members. *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). They only need to be "reasonably co-extensive with those of absent class members." *Parsons v. Ryan,* 754 F.3d 657, 685 (9th Cir. 2014). Further, the representative plaintiff must be a member of the class he seeks to represent. *La Sala v. American Sav. & Loan Assn.*, 5 Cal.3d 864, 875 (1971). "Typicality refers to the nature of the claims or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir. 1992).

Here, Plaintiffs' claims arise from the same facts and legal theories as the Class Members' claims.  Plaintiffs were subject to the same Del Monte CBA, policies and practices with respect to timekeeping, meal and rest breaks, and expense reimbursement. *See* Declaration of Derek Stewart ("Stewart Decl."), ¶¶5-10; Declaration of Javonte Williams ("Williams Decl."), ¶¶5-10. Plaintiffs' claims arise from their employment with Del Monte in California. Thus, typicality is met.

### 4.   *Plaintiffs and Class Counsel will Adequately Protect the Interests of the Class*

Rule 23(a)(4) requires the Class Representative(s) "fairly and adequately represents the interest of the class." The adequacy of representation involves two questions: (1) whether the Representatives and their counsel have any conflicts of interest with other class members, and (2)

16

whether the Representatives and their counsel will vigorously prosecute the action. *See Staton*, 327 F.3d at 957.

Here, Plaintiffs retained counsel with extensive experience in prosecuting wage and hour class actions. Markham Decl., ¶¶33-39; Declaration of Walter L. Haines ("Haines Decl."), ¶3. In addition, Plaintiffs have the same interests as the rest of the Settlement Class, because they have allegedly been injured in substantially the same manner.

### 5. Rule 23(b)(3) Factors are Satisfied

In addition to Rule 23(a) requirements, "the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S.Ct. at 2548. Here, Plaintiffs seek certification under Rule 23(b)(3), which calls for two separate inquiries: whether issues common to the class "predominate" over issues unique to individual class members, and whether the proposed class action is superior to other methods available for adjudicating the controversy. Rule 23(b)(3).

Here, questions of law or fact common to all Settlement Class Members predominate over questions affecting individual members, because Plaintiffs allege that all Settlement Class Members were subject to Del Monte's same CBA, policies and practices, including with respect to timekeeping, meal and rest break policies and business expense reimbursement. *See also* Section A(2), *supra*. Adjudication of these common questions in one action will preserve the court's time and resources. *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

Next, the court considers whether a class action would be superior to individual suits under Rule 23(b)(3) by weighing: (1) the class members' interests in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; and (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum. A fourth factor—the difficulties of managing the class action—is not considered when certification is used for purposes of settlement. *Amchem*, *supra*, 521 U.S. at 616; *True*, *supra*, 749 F.Supp.2d at 1062 n. 12.

Here, Settlement Class Members' interests are relatively small, so they are unlikely to prosecute separate actions. Further, counsel is not aware of other filed similar litigation, and nonetheless this would be first-filed pending action. Markham Decl., ¶20. Finally, this forum is

17

appropriate, as Defendant does business within this District, and Plaintiffs reside in California. Because several issues are common to all Class Members, a class action is superior to numerous individual actions, and the maintenance of this action as a class action will save judicial resources and help avoid inconsistent judgments. *See Sav-On Drug Stores,* 34 Cal.4th at 326.

Thus, the Court should certify Plaintiffs class claims for the purposes of this Settlement.

**B.  The Proposed Settlement is Fair, Adequate, and Reasonable**

Under Rule 23(e), the district court must determine whether the proposed settlement is "fundamentally fair, adequate, and reasonable." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). At the preliminary approval stage, the Court's view is "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud …." *Officers for Justice*, 688 F.2d at 625. Generally, the opinions of counsel should be given considerable weight because of counsel's familiarity with the litigation, and previous experience with cases such as this one. *Id.* At this stage the Court considers whether:

> (1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls with the range of possible approval.

*In re Tableware Antitrust Litig.,* 484 F.Supp.2d 1078, 1079 (N.D. Cal. 2007) (citing Manual for Complex Litigation, Second, § 30.44 (1985)). This Settlement meets all of these criteria.

1.  <u>The Settlement is the Product of Serious, Informed and Noncollusive Negotiations</u>

This Settlement is the result of extensive and hard-fought negotiations. Markham Decl., ¶8. Plaintiffs' counsel specializes in class action litigation representing plaintiffs' interests and the interests of the putative class, and Del Monte was represented by seasoned attorneys at Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

Before mediation, Class Counsel thoroughly analyzed and investigated Class Members' claims and potential damages. Markham Decl., ¶¶6-7. The parties engaged in an exchange of data for mediation purposes. Plaintiffs' expert analyzed the sample of class member time and pay records to provide a damages analysis, and counsel reviewed hundreds of pages of documents. *Id.*

The investigation of the claims in this case gave both parties a clear view of the strengths and weaknesses of their respective positions. *See Adams v. Inter-Con Sec. Sys., Inc*., 2007 WL 3225466,

18

at *3 (N.D. Cal. Oct. 30, 2007) (preliminarily approving the settlement agreement after finding it was reached through extensive negotiations and plaintiff's counsel's thorough investigation of the claims). Based on their knowledge of this action, Plaintiffs determined that the Settlement would constitute the best outcome for the Class Members. Markham Decl., ¶¶21, 32. Likewise, Defendant concluded that this action should be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the substantial risk of dismissal, expense, inconvenience, and burden of further legal proceedings, and the uncertainties of trial and appeals.

The parties participated in a mediation before a private neutral with extensive experience in wage and hour class actions. *Id.*, ¶8. That indicates the settlement was free of collusion, and "supports approval of the settlement." *Glass v. UBS Fin. Servs.*, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007); *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010).

The parties have been cooperative, yet aggressive, and displayed capable and experienced advocacy on both sides. Accordingly, "[t]here is … every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." *In re Wash. Public Power Supply Sys. Sec. Litig.*, 720 F.Supp. 1379, 1392 (D. Ariz. 1989).

> ### 2. The Settlement has no "Obvious Deficiencies" and Falls within the Approval Range

#### a) *California courts frequently approve similar class action settlements*

"[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, when evaluating the amount offered in settlement, the Court should consider "the complete package taken as a whole," and the amount should "not be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625-28.

Courts routinely approve class action settlements where the settlement amount is a lower percentage of the claimed amount of damages. *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability to be fair, adequate and reasonable

19

given the uncertainty of continued litigation); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of 16.67% of the potential recovery adequate in light of the plaintiff's risks); *Villegas v. J.P Morgan Chase & Co.*, 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012). Simply put, "the fact that a proposed settlement may only amount to a fraction of the potential recovery does not mean that [it] should be disapproved." *7-Eleven Owners, supra*, 85 Cal.App.4th at 1150, citing *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998).

Here, the Settlement represents approximately 17% of the realistic maximum potential exposure for Plaintiffs' meal and rest break, unreimbursed expenses and unpaid overtime claims, without any risks, costs, and uncertainty of prolonged litigation. Under the Settlement, each class member will receive approximately $4.29 per workweek ($1,207,063.33 net divided by 281,550 workweeks). Without accounting for the length of each class member's employment with Del Monte, this will amount to an approximate recovery of $264 per class member. Markham Decl., ¶22; *see also Villegas, supra*, 2012 WL 5878390, at *6 (approving settlement with approximately $255 settlement payment per class member). This is a great result in light of Del Monte's robust legal and factual defenses, and when considering the difficulties Plaintiffs face to establish liability and prevail at certification and trial.

  b)    *This Settlement is Excellent Result Based on Certification and Liability Risks*

Plaintiffs recognize several risks to certification and success on the merits. Markham Decl., ¶23. First, at the time this case settled, Defendant's motion to compel arbitration and dismiss class claims was set for a hearing. Absent the settlement, all representative claims faced dismissal.

In its motion, Defendant argued that both Del Monte and the CBA allow employees a reasonable opportunity to take all meal and rest periods required under law. Del Monte argued that interpretation of the CBA is required for the resolution of Plaintiffs' wage and hour claims. Thus, such claims could be preempted by section 301 of the Labor Management Relations Act ("LMRA"). Markham Decl., ¶24.

Even in the unlikely scenario that preemption did not apply, Plaintiffs' claims face other certification and merits risks. In support of their overtime claim, Plaintiffs would argue, based on *Williams v. Superior Court*, 221 Cal.App.4th 1353 (2013) that an overtime/off the clock class can be

certified when an employer has a *de facto* practice of not paying employees for all hours worked, even if the employer's official written policy forbids off the clock work. *Id.* at 1365, 1369. Plaintiffs would also argue, that under *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), there is no *de minimis* doctrine in California, and employers must compensate employees for the minutes routinely worked off–the–clock. *Id.* at 848. However, Plaintiffs acknowledge that Defendant would attempt to distinguish these cases. *Williams* would likely be distinguished on the basis that in *Williams* the employer's policy specifically excluded from payment employee hours that were indisputably worked every day, whereas here, Del Monte's policy advised Class Members that they would be paid for all hours worked. Markham Decl., ¶25. Additionally, Defendant would likely distinguish *Starbucks* by arguing that here, in contrast to the facts at issue in *Starbucks*, Plaintiffs and class members did frequently obtain overtime wages, as a typical shift was 9.5 hours in length, and payroll records indicate substantial overtime payments were made to Class Members, particularly during the peak season. *Id.,* ¶26. Further, Defendant will likely contend that where an employer provides a means to record work time, the employer is entitled to rely on those time records, and is not required to audit other available records to ascertain if any off-the-clock work is occurring. *Brinker, supra,* 53 Cal.4th at 1051 ("that employees are clocked out creates a presumption they are doing no work"); *Hertz v. Woodbury County*, 566 F.3d 775, 781-782 (8th Cir. 2009) (no duty to audit other available records); *Jong v. Kaiser Found. Health Plan, Inc.*, 226 Cal.App.4th 391, 398-399 (2014) (same). Defendant also argues that Labor Code section 551's provisions regarding one day's rest in seven are inapplicable where, as here, a CBA applies. Markham Decl., ¶27.

For their meal break claim, Plaintiffs would argue that *Donohue v. ABN Services, LLC*, 11 Cal.5th 58 (2021) creates a rebuttable presumption that a time record showing missed, short or late meal period indicates the employee was not provided a meal break. However, in addition to the argument that the meal break claim is preempted by the CBA, Del Monte would also argue that rebutting the presumption that meal breaks were not provided requires evidence of individualized experiences, preventing the findings of commonality and predominance. Markham Decl., ¶28.

In support of their meal and rest break claims, Plaintiffs would argue, based on *Brinker*, that Del Monte undermined its formal policies "by pressuring employees to perform their duties in ways

21

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

that omit breaks." *Brinker,* 53 Cal.4th at 1040.   However, even if these claims survived the initial dismissal hurdle, Del Monte would likely point to proof that Class Members often (on different occasions and for different reasons) voluntarily choose not to take compliant breaks. This could create individualized issues defeating commonality and predominance, and manageability. Lastly, even if the rest break class were certified, damages calculations could present complicated issues as Del Monte employees did not have to clock out to take rest breaks, or otherwise record them. Markham Decl., ¶29.

Regarding Plaintiffs' claim of unreimbursed safety equipment, Defendant will contend that it provides safety equipment on the production lines, and to the extent Class Members did not submit for reimbursement, this claim would be susceptible to summary judgment, and Plaintiffs would face hurdles in quantifying and proving commonality for certification purposes. *See e.g.*, *Hammit v. Lumber Liquidators*, 19 F. Supp. 3d 989, 1001 (S.D. Cal. 2014) (granting summary judgment when employee failed to request reimbursement). Markham Decl., ¶30.

Plaintiffs' wage statement and untimely wages claims are derivative of Plaintiffs' unpaid time, meal and rest break, and unreimbursed business expense claims, so if Plaintiffs do not prevail on the underlying claims, their derivative claims would also fail. *See Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 524-25 (2009). Also, Defendant will likely assert that wages that were not paid cannot form the basis of these derivative claims based on *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1336-37 (2018). To the extent Plaintiffs assert a "facial" Labor Code section 226 claim for Defendant's failure to distinguish between meal and rest premiums, as wages, on its wage statements, this claim faces risks on the merits and has been summarily adjudicated against Class Counsel in a prior class action. Markham Decl., ¶31; *see also Santos v. UPS*, 2021 WL 2322377, **6-7 (N.D. Cal., June 7, 2021).

Thus, when considering the risks of dismissal, unsuccessful certification, or the risk that Plaintiffs might not have been able to succeed at trial, and the risk that a jury could award damages significantly less than $2,000,000, the settlement amount is reasonable. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458; *Sandoval v. Tharaldson Emp. Mgmt., Inc.*, 2010 WL 2486346 (C.D. Cal. June 15, 2010), at *7.

22

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

3.   <u>The Settlement does not Improperly Grant Preferential Treatment to Class Representatives or Segments of the Class</u>

The Settlement payment is based on the number of workweeks Class Members worked during the class period. Settlement Agreement, ¶1.30.

In addition, Plaintiffs will each receive $15,000 for their time and efforts in representing the Class. *Id.*, ¶3.2.1. "Incentive awards [for class representatives] are fairly typical in class actions." *Cellphone Termination Fee Cases*, 186 Cal.App.4th 1380, 1393 (2010), citing *Rodriguez v. West Publ'g*, 563 F.3d 948, 958 (9th Cir. 2009). California courts agree that a class representative is entitled to such an award. *Cellphone Termination, supra*, 186 Cal.App.4th at 1394. "Since without a named plaintiff there can be no class action, such compensation as may be necessary to induce him to participate in the suit could be thought the equivalent of the lawyers' nonlegal but essential case-specific expenses, such as long-distance phone calls, which are reimbursable." *Clark v. Am. Residential Servs.*, 175 Cal.App.4th 785, 804 (2009), citing *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir. 1992).

Here, the service payments to Plaintiffs are based on the extent of Plaintiffs' participation in this action, and not conditioned upon Plaintiffs' support of the settlement. *Cf. Radcliffe v. Experian Info. Solutions, Inc.*, 715 F.3d 1157, 1165 (2013). Throughout this action, Plaintiffs assisted in investigation of the claims, participated in multiple call conferences with counsel, provided and reviewed documents and pleadings, and were on standby during the mediation session. *See* Stewart Decl., ¶¶15-16; Williams Decl., ¶¶15-16.

Courts award incentive awards in this range. *Ross v. U.S. Bank Nat'l Ass'n*, 2010 WL 3833922, at *3 (N.D. Cal. Sept. 29, 2010) (approving an award of $20,000 to each of four named plaintiffs based on their contributions to litigation and the risk that being a class representative would harm their reputation); *see also Ridgeway v. Wal-Mart Stores Inc.*, 2017 WL 4071293, at *19 (N.D. Cal., Sept. 14, 2017) ($15,000 incentive awards for each of the named plaintiffs awarded); *Low v. Trump University, LLC*, 246 F.Supp.3d 1295, 1316 (S.D. Cal. 2017) ($15,000 incentive award approved where plaintiffs "devoted significant amounts of time and energy" to the action); *Ontiveros v. Zamora*, 303 F.R.D. 356, 365–66 (E.D. Cal. 2014) (granting $15,000 incentive award as proportional to the $3,700 average award of other class members). Thus, the proposed

23

service payments are reasonable.

        4.   <u>The Stage of the Proceedings is Sufficiently Advanced to Permit Preliminary</u>
           <u>Approval of the Settlement</u>

"A court is more likely to approve a settlement if most of the discovery is completed because it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 at 527 (C.D. Cal. 2004). However, the settlement can be approved even in the absence of any discovery, if other factors are satisfied. *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011). The bottom line is that "the parties have sufficient information to make an informed decision about the settlement." *Durham v. Cont'l Cent. Credit, Inc.*, 2011 WL 90253, at *3 (S.D. Cal. Jan. 10, 2011), citing *Linney v. Cellular Alaska P'ship*, 151 F.3d at 1239.

Here, before settling this action, the parties had a sufficient understanding of their respective claims and defenses. Before mediation, the parties engaged in informal discovery. Plaintiffs received hundreds of pages of documents, including the CBA, and a class sample of time and payroll records. *See* section III, *supra*; Markham Decl., ¶6. Before mediation, Class Counsel had investigated Plaintiffs claims, examined documents and data, and engaged an expert to perform damages calculations. *Id.*, ¶7. At the time of mediation, the parties knew and understood their respective positions. As a result of the work performed in this case, the real value of the classes' claims was well known, and Class Counsel determined that the Settlement with Del Monte is fair, reasonable, adequate, and in the best interest of the Class. *Young v. Polo Retail, LLC,* 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007).

## VI.   THE PROPOSED NOTICE TO THE CLASS SHOULD BE APPROVED

If the Court grants preliminary approval, the Court should order that the class notice be provided. Manual for Complex Litig., Fourth, § 21.632 (2004) at 321. The threshold requirement regarding the sufficiency of the class notice is whether the means proposed for distributing the notice are reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the right to opt out or object to the settlement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974); *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

24

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-AMO
Mem. of Points and Authorities iso Plaintiffs' Motion for Preliminary Approval

Here, the Notice is more than sufficient, because it gives Class Members, in easy to understand and clear language: (1) basic information about the action and the Settlement; (2) an estimate of workweeks Class Members worked during the Class Period, and an explanation how Class Members can dispute this calculation; (3) an explanation how the payout from the Settlement will be calculated for each Class Member, and an estimate of the Class Member's Individual Payment; (4) an explanation how Class Members can exercise their right to opt-out from, or object to, the Settlement; (5) an explanation that any claims against Del Monte that could have been litigated in this Action will be released if the Class Member does not opt out; (6) name of Class Counsel and information regarding attorneys' fees and costs; (7) the date of the Fairness Hearing and an explanation of eligibility to appear at the Fairness Hearing; and (8) the telephone number, e-mail address, and website address, where Class Members can obtain additional information. *See* Ex. A (proposed Class Notice).

Thus, the Notice plan is fair and adequate and complies with the requirements of Rule 23.

## VII.  CAFA NOTICE IS REQUIRED AND WILL BE PROVIDED

This action falls under 28 USC § 1332 as amended by Class Action Fairness Act of 2005 ("CAFA"). As such, notice of settlement under CAFA is required and will be given by Defendant within 10 days of filing of this motion. 28 USC § 1715(b).

## VIII.  CONCLUSION

The parties thoroughly investigated Plaintiffs' claims before settling this case. In the judgment of both parties, the proposed Settlement is a fair, reasonable, and adequate compromise of the issues in dispute in light of the strengths and weaknesses of each party's case. Plaintiffs' motion should, respectfully, be granted.

Dated: December 4, 2023                          Respectfully submitted,

                                                 THE MARKHAM LAW FIRM


                                                 */s/ David R. Markham*
                                                 David R. Markham, Maggie Realin, Lisa Brevard
                                                 Attorneys for Plaintiffs