**THE MARKHAM LAW FIRM**
David R. Markham (SBN 71814)
dmarkham@markham-law.com
Lisa R. Brevard (SBN 323391)
lbrevard@markham-law.com
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (619) 399-3995/Fax: (619) 323-1684

**COHELAN KHOURY & SINGER**
Isam C. Khoury (SBN 58759)
ikhoury@ckslaw.com
Michael D. Singer (SBN 115301)
msinger@ckslaw.com
Maggie K. Realin (SBN 263639)
mrealin@ckslaw.com
605 C Street, Suite 200
San Diego, CA 92101
Telephone: (619) 595-3001/Fax: (619) 595-3000

**UNITED EMPLOYEES LAW GROUP**
Walter L. Haines (SBN 71075)
whaines@uelglaw.com
8605 Santa Monica Blvd., #63354
West Hollywood, CA 90069
Telephone: (562) 256-1047/Fax: (562) 256-1006

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION**

| | |
|---|---|
| DEREK STEWART, an individual, and JAVONTE WILLIAMS, an individual, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>DEL MONTE FOODS, INC., a Delaware corporation,<br><br>Defendant. | **Case No.: 1:22-CV-04919-RMI**<br>**CLASS AND PAGA REPRESENTATIVE ACTION**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR FINAL ORDER AND JUDGMENT APPROVING CLASS AND REPRESENTATIVE ACTION SETTLEMENT**<br><br>Date: May 28, 2024<br>Time: 11 a.m.<br>Judge: Hon. Robert M. Illman<br>Courtroom: Eureka-McKinleyville Courthouse |

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. PROSECUTION OF THIS ACTION .....................................................................................1

III. PRELIMINARY APPROVAL OF THE SETTLEMENT .......................................................2

IV. THE DISSEMINATION OF THE NOTICE AND THE REACTION OF THE CLASS.......2

V. SUMMARY OF THE SETTLEMENT TERMS....................................................................3

VI. THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL..................4

A. The Settlement was Reached through Arm's-Length Negotiations by Experienced Class Action Lawyers, and was Based on Adequate Investigation and Discovery..........................5

B. The Strength of Plaintiffs' Claims and Defendant's Defenses Favors Final Approval ... 6

C. Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval 8

D. The Risk of Maintaining Class Action Status through Trial Favors Approval................ 9

E. The Amount Offered in Settlement Favors Final Approval........................................... 10

F. The Stage of the Pleadings and Extent of Discovery Favor Final Approval ................ 10

G. The View of Experienced Counsel Favors Final Approval ........................................... 11

H. The Class's Reaction to the Proposed Settlement Favors Final Approval..................... 12

I. The Balanced Factors Weigh in Favor of Final Approval................................................. 13

VII. NOTICE TO THE CLASS SATISFIES DUE PROCESS. ...................................................13

VIII. CONCLUSION......................................................................................................................14

i

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

**TABLE OF AUTHORITIES**

**Cases**

*Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611 (N.D. Cal. 2014) ..................................... 10

*Boyd v. Bechtel Corp.*, 485 F.Supp. 610 (N.D. Cal. 1979) .......................................................... 11

*Brinker Rest. Corp. v. Super. Ct.*, 53 Cal.4th 1004 (2012) ............................................................ 7

*Browne v. American Honda Motor Co., Inc.*, 2010 WL 9499072 (C.D. Cal. July 29, 2010) ...... 13

*Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004) ................................................... 5

*Cohorst v. BRE Properties, Inc.*, 2012 WL 153754 (S.D. Cal. Jan. 18, 2012) ............................. 13

*Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 WL 5506080 (C.D. Cal. Oct. 17, 2011) ....... 12

*Cotton v. Hinton*, 559 F.2d 1326 (5th Cir. 1977) ......................................................................... 10

*Donohue v. ABN Services, LLC*, 11 Cal.5th 58 (2021) .................................................................. 7

*Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794 (1996) ................................................................... 4

*Durham v. Cont'l Cent. Credit, Inc.*, 2011 WL 90253 (S.D. Cal. Jan. 10, 2011) ......................... 11

*Eisen* v. *Carlisle & Jacquelin*, 417 U.S. 156 (1974) ..................................................................... 13

*Frame v. Hillman*, 2002 WL 34520817 (S.D. Cal. July 31, 2002) ................................................. 9

*G.F. v. Contra Costa County*, 2015 WL 4606078 (N.D. Cal. July 30, 2015) .............................. 11

*Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508 (2009) .................................................................... 8

*Hammit v. Lumber Liquidators*, 19 F. Supp. 3d 989 (S.D. Cal. 2014) .......................................... 8

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ............................................................. 4

*In re Heritage Bond Litig.*, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .................................... 5

*In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................... 13

*In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988 (9th Cir.2010) ................................... 12

*In re Netflix Privacy Litig.*, 2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ................................. 12

*In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036 (N.D. Cal. 2008) ..................................... 9, 12

*In re Pacific Enters. Sec. Litig.,* 47 F.3d 373 (9th Cir. 1995) .................................................. 4, 12

*In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226 (N.D. Cal. Sept. 13, 2011) ...... 11

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ....................... 9

*Knight v. Red Door Salons, Inc.*, 2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ............................. 11

*Linney v. Cellular Alaska P'ship*, 151 F.3d 1234 (9th Cir. 1998) ................................................ 11

*Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308 (2018) ................................................ 8

*Martin v. AmeriPride Servs*., 2011 WL 2313604 (S.D. Cal. June 9, 2011) ................................. 12

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ............................................ 14

*Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) .............................................. 6

i

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

*Nat'l Rural Telecomm. v. DirectTV, Inc.*, 221 F.R.D. 523 (C.D. Cal. 2004) ...................... 6, 8, 10

*Officers for Justice v. Civil Serv. Comm'n of S.F.,* 688 F.2d 615 (9th Cir. 1982) .......... 4, 5, 10, 13

*Rodriguez v. West Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) .............................................. 11, 13

*Satchell v. Fed. Express Corp.*, 2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .............................. 6

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ........................................................................ 4

*Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ..................................... 6

*Thomas v. Cognizant Tech. Sols. U.S. Corp.*, 2013 WL 12371622 (C.D. Cal. June 24, 2013).... 10

*Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018) ......................................................................... 6

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (2002) ....................................................................... 9

*Williams v. Superior Court*, 221 Cal.App.4th 1353 (2013) ............................................................ 6

*Young v. Polo Retail, LLC,* 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) .................................... 11

**Statutes**

Cal. Civ. Proc. Code §384(b)........................................................................................................... 4

**Rules**

Fed. R. Civ. Proc. 23(c)(2)(B) ...................................................................................................... 13

ii

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

I. INTRODUCTION

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Derek Stewart and Javonte Williams seek final approval of a $2,000,000 non-reversionary Settlement on behalf of current and former non-exempt production employees of Defendant Del Monte, Inc. ("Del Monte" or "Defendant") in California between August 29, 2018 and November 26, 2023. Final approval is warranted here because the Settlement Agreement is fair, reasonable, and adequate. This Settlement was reached following thorough evaluation of the claims and facts alleged in this action, and after mediation with an experienced neutral, Louis Marlin, Esq.  Declaration of David R. Markham ("Markham Decl."), ¶¶3-4, filed concurrently with this motion.

This Settlement is an excellent result obtained without the risks, expenses, and delay of further litigation. In a testament to the fairness and reasonableness of the Settlement, as of the date of this motion, **not a single** Class Member objected to the Settlement and **not a single one** opted out of it, resulting in a 100% participation rate. Supplemental Declaration of Mary Butler of Simpluris, Inc., filed concurrently with this motion ("Butler Supp. Decl.") at ¶¶7-8.

Plaintiffs respectfully request that the Court grant final approval of this Settlement.

II. **PROSECUTION OF THIS ACTION**

Plaintiffs presented the factual and procedural background of this case in their motion for preliminary approval, at section II, Dkt. No. 41-1, filed on December 4, 2023.  In short, Plaintiffs alleged that production line employees: (i) were not compensated for all time worked, including overtime for time worked during meal periods, (ii) were not provided uninterrupted meal and rest periods due to the need to carry radios and respond to repairs on the production line, (iii) were required to work seven days per week during the peak season, without proper compensation, and (iv) incurred unreimbursed supply equipment expenses. Markham Decl., ¶2. The parties engaged in discovery, which included hundreds of pages of documents, Defendant's CBA, and a class sample of time and payroll records. *Id.*, ¶3.

As part of the settlement, on January 18, 2024, Plaintiffs filed a Second Amended Complaint ("SAC"), which clarifies the settlement class definition covers all non-exempt production employees and alleges that failure to properly compensate wages includes failure to pay reporting

1

time or "show up" pay, and all wages at the correct rate of pay. All claims released in the Settlement are alleged in the SAC. Dkt. No. 52; Markham Decl., ¶5.

As a result of an aggressive investigation of the claims in this action, a careful review of documents, and an expert analysis of a classwide sample of records, the parties had a clear understanding of their respective claims and defenses. *Id,* ¶3.

Further, on August 2, 2023, the parties participated in an all–day mediation session before Louis Marlin of Louis Marlin Mediation, a neutral with extensive experience in large wage and hour class actions. Markham Decl., ¶4. At the conclusion of mediation, the parties reached the settlement in principle. After additional weeks of arms'-length negotiations, the parties finalized the terms of the Settlement, and presented it for the Court's preliminary approval on December 4, 2023. *Id.*

### III.   PRELIMINARY APPROVAL OF THE SETTLEMENT

On January 16, 2024, the Court preliminarily approved the Settlement in this action. Dkt. No. 49, "Preliminary Approval Order." Having conducted the preliminary evaluation of the Settlement terms, the Court found that the factors warranting preliminary approval were satisfied. *Id*. The Court conditionally certified the Settlement Class as defined in the Settlement Agreement. *Id*. at ¶2. The Court appointed Plaintiffs' Counsel as Class Counsel, Plaintiffs as the Class Representatives, and Simpluris, Inc. as Settlement Administrator. *Id*., ¶¶9-11. Further, the Court approved the proposed Class Notice, and ordered a distribution of the Notice plan as provided in the Settlement Agreement. *Id*., ¶5.

### IV. THE DISSEMINATION OF THE NOTICE AND THE REACTION OF THE CLASS

The Settlement Administrator mailed the notices to the Settlement Class on March 15, 2024. Butler Supp. Decl., ¶4. The notice informed the Class Members of this lawsuit and the Settlement, and advised Class Members that they had the right to opt out of the settlement or object to its terms. Ex. A to Butler's first Declaration, filed on March 25, 2024. Dkt. No. 58-5. To date, not a single Class Member objected to the settlement, and not a single one of over 4,900 Class Members opted out of it. Butler Supp. Decl., ¶¶7-8.

//

## V. SUMMARY OF THE SETTLEMENT TERMS

Plaintiff incorporates by reference his original memorandum of points and authorities in support of his unopposed motion for preliminary approval, which described the settlement terms in detail. Dkt. No. 41-1 at section IV. In short, the Settlement terms are as follows:

The Settlement Class includes all current or former non-exempt production persons employed by Defendant in California between August 29, 2018 and November 26, 2023, who do not opt out of the settlement. Settlement Agreement, ¶1.5. Class Members who do not opt out of the Settlement will release Del Monte from all claims that relate to the causes of action asserted in this action – or that those that could have been asserted in this action based on the facts alleged in Plaintiffs' SAC. *Id.*, ¶¶5.2-5.4.

This is a non-reversion[1] and non-claims made settlement. The Settlement Amount is $2,000,000.[2] *Id.*, ¶1.29. This amount includes payments to Class Members, attorneys' fees (up to $666,666.67, or 33.33% of the Settlement Amount) and costs ($13,593.44),[3] $60,000 allocated as PAGA penalties, of which 25% (or $15,000) shall be paid to aggrieved employees and 75% (or $45,000) to the LWDA, the FLSA payment of $50,000, the Class Representatives' Service Payments (up to $30,000 in total), and administration costs of $32,470. *Id*. Notably, Del Monte will pay the employer's portion of the payroll taxes in addition to the Settlement Amount. *Id*. The Net Settlement Amount is $1,148,469.89. Butler Supp. Decl., ¶6.

Class Members who do not opt out of the Settlement will receive Individual Settlement Payments from the Net Settlement Amount based on the number of workweeks they worked as members of the putative class during the Settlement Class Period. Settlement Agreement, ¶¶1.30.

---

[1] If any of the $50,000 FLSA allocation payments remain uncashed, they would be returned to Defendant, because Del Monte would not receive a FLSA release for those individuals. Settlement Agreement, ¶¶1.20, 3.1, 3.2.5.

[2] The Settlement Agreement provides that in the event the total 281,550 workweeks during the class period increases by more than 8% (*i.e.* in excess of 304,074 unique workweeks), Del Monte will have an option to increase the Gross Settlement Amount by a proportionate percentage for each additional unique workweeks that exceed 304,074, or stop the class period at the point at which the unique workweeks does not exceed 304,074. Settlement Agreement, §9. Here, there are 303,163 workweeks, and thus, the escalator clause does not apply. Supp. Butler Decl., ¶6.

[3] Plaintiffs' fee motion is pending and will be heard concurrently with this Motion. *See* Dkt. No. 58

Twenty-five percent (25%) of each Class Member's Individual Settlement Payment will be allocated as wages, and seventy-five percent (75%) as non-wages (penalties and interest), with withholding to apply only to the portion allocated to wages. *Id.*, ¶3.2.4.1.

Settlement checks will be valid for 180 calendar days. *Id.*, ¶4.3.1. After that time, the Parties propose that the funds represented by uncashed checks (with the exception of those related to the FLSA allocation as noted above) be tendered to the Controller of the State of California to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 *et seq.*, for the benefit of those Class Members who did not cash their checks, until such time that they claim their property, in compliance with Code of Civil Procedure section 384(b), and subject to the Court's approval. *Id.*, ¶4.3.3.

## VI. THE SETTLEMENT SATISFIES THE CRITERIA FOR FINAL APPROVAL

A Settlement of a class action requires approval of the court. Fed. R. Civ. Proc. 23(e). To warrant final approval, a class settlement must be fair, adequate, and reasonable. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) citing *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *In re Pacific Enters. Sec. Litig.*, 47 F.3d 373, 377 (9th Cir. 1995). The purpose of this requirement is to "prevent fraud, collusion or unfairness to the class." *Dunk v. Ford Motor Co.,* 48 Cal.App.4th 1794, 1800-01 (1996). The court has broad discretion in determining whether to approve or reject a proposed settlement, but generally, there is a strong judicial preference for pre-trial settlement of complex class actions. *See Officers for Justice v. Civil Serv. Comm'n of S.F.,* 688 F.2d 615, 625 (9th Cir. 1982).

In evaluating the settlement, the court need not address whether the settlement is ideal or the best outcome, but only determines whether the settlement is fair, free of collusion and consistent with the plaintiff's fiduciary obligations to the class. *See Hanlon, supra,* 150 F.3d at 1027. The following are the factors the court may consider in order to approve the settlement:

> (1) the strength of Plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel;

(7) the presence of governmental participants;[4] and (8) the reaction of the class members to the proposed settlement.

*Officers for Justice, supra*, 688 F.2d at 625; *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) citing *Hanlon, supra*, 150 F.3d at 1026.  This Settlement satisfies the above requirements.

### A. The Settlement was Reached through Arm's-Length Negotiations by Experienced Class Action Lawyers, and was Based on Adequate Investigation and Discovery

"A presumption of correctness is said to attach to a class settlement reached in arm's-length negotiations between experienced capable counsel after meaningful discovery." *In re Heritage Bond Litig.*, 2005 WL 1594403, at *9 (C.D. Cal. June 10, 2005).  Here, the proposed Settlement is the result of extensive and hard-fought negotiations. Markham Decl., ¶4.  Plaintiffs had two (and later three) separate law firms representing their interests and the interests of the putative class, and Defendant was represented by the seasoned attorneys at Ogletree Deakins.  Defendant has denied and continues to deny the claims and contentions alleged in this action and, absent this settlement, was committed to continuing to vigorously defend against the Plaintiffs' claims.  *Id.*, ¶6.

Counsel prosecuted this action aggressively on behalf of the respective parties.  Class Counsel conducted interviews with Plaintiffs and thoroughly investigated Class Members' claims against the Defendant. *Id.*, ¶3. The Parties engaged in discovery. Defendant produced its employment policies, personnel records, CBAs, and a class sample of time and pay records. Plaintiffs retained an expert to analyze the data and prepare a damages model. *Id*.

This case was vigorously investigated, which gave the parties a clear view of the strengths and weaknesses of their respective positions.  Based on their knowledge of this action, Plaintiffs determined that the Settlement would constitute the best outcome for the Class Members.  *Id.*, ¶7.

Likewise, Defendant concluded that this action should be settled in the manner and upon the terms and conditions set forth in the Settlement Agreement in order to avoid the expense, risk and burden of further legal proceedings, including the uncertainties of trial and appeals.

---

[4] Because this action was filed under 28 USC § 1332 as amended by Class Action Fairness Act of 2005 ("CAFA") (Dkt. No. 1, ¶¶6-7), a notice of settlement under CAFA was required, and was given by Defendant on March 5, 2024, (28 USC §1715(b)). Dkt. No. 56. There was no communication from any of the recipients of the notice.

5

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

The Settlement was free of collusion, and reached through hard-fought, arms'-length negotiations with the assistance of Louis Marlin, a regarded mediator with experience mediating large wage and hour class actions. *Id.*, ¶4. "The assistance of a well-respected mediator with substantial experience in employment litigation . . . supports approval of the settlement." *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 479 (E.D. Cal. 2010); *Satchell v. Fed. Express Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007). The parties aggressively pursued their positions and demonstrated capable and experienced advocacy throughout the case. Accordingly, "[t]here is … every reason to conclude that settlement negotiations were vigorously conducted at arms' length and without any suggestion of undue influence." *In re Wash. Public Power Supply System Sec. Litig.*, 720 F. Supp. 1379, 1392 (D. Ariz. 1989)

**B.   The Strength of Plaintiffs' Claims and Defendant's Defenses Favors Final Approval**

To determine the fairness of the proposed Settlement, the strength of plaintiff's case on the merits is balanced against the settlement offer. *Nat'l Rural Telecomm. v. DirectTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). Even where the plaintiff's case might be strong, litigation poses risks, especially where the defendant denies liability and opposes certification. *See Thieriot v. Celtic Ins. Co.*, 2011 WL 1522385, at *5 (N.D. Cal. Apr. 21, 2011). Here, although Plaintiffs are confident in their position, they acknowledge certain weaknesses in their legal claims:

First, at the time this case settled, Defendant's motion to compel arbitration and dismiss class claims was set for a hearing. Defendant argued that both Del Monte and the CBA allow employees a reasonable opportunity to take all meal and rest periods required under law, and that the interpretation of the CBA is required for the resolution of Plaintiffs' wage and hour claims. Thus, such claims could be preempted by section 301 of the Labor Management Relations Act ("LMRA"). Markham Decl., ¶9.

Even in the unlikely scenario that preemption did not apply, Plaintiffs' claims faced other certification and merits risks. In support of their overtime claim, Plaintiffs would argue, based on *Williams v. Superior Court*, 221 Cal.App.4th 1353 (2013) that an overtime/off the clock class can be certified when an employer has a *de facto* practice of not paying employees for all hours worked, even if the employer's official written policy forbids off the clock work. *Id.* at 1365, 1369. Plaintiffs

6

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

would also argue, that under *Troester v. Starbucks Corp.*, 5 Cal. 5th 829 (2018), there is no *de minimis* doctrine in California, and employers must compensate employees for the minutes routinely worked off–the–clock. *Id*. at 848. However, Plaintiffs acknowledge that Defendant would attempt to distinguish these cases. *Williams* would likely be distinguished on the basis that in *Williams* the employer's policy specifically excluded from payment employee hours that were indisputably worked every day, whereas here, Del Monte's policy advised Class Members that they would be paid for all hours worked. Markham Decl., ¶10. Additionally, Defendant would likely distinguish *Starbucks* by arguing that here, in contrast to the facts at issue in *Starbucks*, Plaintiffs and class members did frequently obtain overtime wages, as a typical shift was 9.5 hours in length, and payroll records indicate substantial overtime payments were made to Class Members, particularly during the peak season. *Id.,* ¶11. Further, Defendant will likely contend that where an employer provides a means to record work time, the employer is entitled to rely on those time records, and is not required to audit other available records to ascertain if any off-the-clock work is occurring. *Brinker, supra,* 53 Cal.4th at 1051 ("that employees are clocked out creates a presumption they are doing no work"). Defendant also argues that Labor Code section 551's provisions regarding one day's rest in seven are inapplicable where, as here, a CBA applies. Markham Decl., ¶12.

For their meal break claim, Plaintiffs would argue that *Donohue v. ABN Services, LLC*, 11 Cal.5th 58 (2021) creates a rebuttable presumption that a time record showing missed, short or late meal period indicates the employee was not provided a meal break. However, Del Monte would also argue that rebutting the presumption that meal breaks were not provided requires evidence of individualized experiences, preventing the findings of commonality and predominance. Markham Decl., ¶13.

Plaintiffs would also argue, based on *Brinker*, that Del Monte undermined its formal policies "by pressuring employees to perform their duties in ways that omit breaks." *Brinker,* 53 Cal.4th at 1040.  However, even if these claims survived the initial dismissal hurdle, Del Monte would likely point to proof that Class Members often (on different occasions and for different reasons) voluntarily chose not to take compliant breaks. This could create individualized issues defeating

commonality and predominance, and manageability. Lastly, even if the rest break class were certified, damages calculations could present complicated issues as Del Monte employees did not have to clock out to take rest breaks, or otherwise record them. Markham Decl., ¶14.

Regarding Plaintiffs' claim of unreimbursed safety equipment, Defendant will contend that it provides safety equipment on the production lines, and to the extent Class Members did not submit for reimbursement, this claim would be susceptible to summary judgment, and Plaintiffs would face hurdles in quantifying and proving commonality for certification purposes. *See e.g.*, *Hammit v. Lumber Liquidators*, 19 F. Supp. 3d 989, 1001 (S.D. Cal. 2014) (granting summary judgment when employee failed to request reimbursement). Markham Decl., ¶15.

Plaintiffs' wage statement and untimely wages claims are derivative of Plaintiffs' unpaid time and meal and rest break claims, so if Plaintiffs did not prevail on the underlying claims, their derivative claims would also fail. *See Gomez v. Lincare, Inc.*, 173 Cal.App.4th 508, 524-25 (2009). Also, Defendant will likely assert that wages that were not paid cannot form the basis of these derivative claims based on *Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1336-37 (2018). To the extent Plaintiffs assert a "facial" Labor Code section 226 claim for Defendant's failure to distinguish between meal and rest premiums, as wages, on its wage statements, this claim faces risks on the merits and has been summarily adjudicated against Class Counsel in a prior class action. Markham Decl., ¶16; *see also Santos v. UPS*, 2021 WL 2322377, \*\*6-7 (N.D. Cal., June 7, 2021).

Thus, Plaintiffs faced a significant risk that their claims would not be certified, and/or they would not prevail at trial, should this litigation continue. Accordingly, this factor weighs in favor of final approval.

**C. Expense, Complexity, and Likely Duration of Further Litigation Favor Final Approval**

"In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomm.*, 221 F.R.D. at 526, citing 4A Conte & H. Newberg, Newberg on Class Actions, §11:50 at 155 (4th ed. 2002). In analyzing this factor, the Court should compare the uncertainties of prolonged

8

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

litigation with the immediate benefits that the Settlement provides to the Class Members. *Nat'l Rural Telecomm.*, 221 F.R.D. at 526, citing *Oppenlander,* 64 F.R.D. at 624.

Here, if this action progressed, Plaintiffs would incur costs in conducting additional discovery, opposing Defendant's motion to compel arbitration and dismiss class claims, and if successful, bringing their motion for class certification, bringing and/or defending further dispositive motions, and (potentially) preparing for, and conducting trial. Plaintiffs' success on the merits is uncertain (*see* section B, above). Further, any judgment on the trial court level would not necessarily end this litigation, as the losing party could file an appeal. Considering that the average civil appeal in the Ninth Circuit can take up to a year,[5] there is a high risk that absent settlement, this litigation would continue for years before Class Members would see any recovery, if there would be any recovery at all. *Frame v. Hillman*, 2002 WL 34520817, at *6 (S.D. Cal. July 31, 2002) (stating that the risks and expenses of prolonged litigation tip the scale in favor of the settlement approval).

Conversely, Settlement disposes of all litigation risks and uncertainties. Courts have acknowledged that settlements of class actions are favored when they provide immediate benefits to the class without the risk and expense involved in continued litigation. *See In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 933 (8th Cir. 2005). Because this is the case here, this factor favors final approval.

**D.  The Risk of Maintaining Class Action Status through Trial Favors Approval**

The risk that further litigation might result in no recovery for Plaintiffs is an important factor to consider in the award of fees. *In re Omnivision Techs., Inc.*, 559 F.Supp.2d 1036, 1046-47 (N.D. Cal. 2008); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (2002). As discussed at length in section B, above, the survival of Plaintiffs' class claims is uncertain, due to Defendant's motion to compel arbitration and dismiss class claim. Even if Plaintiffs' class claims survive Defendant's motion, the certification of their claims is uncertain. This is especially true in a case as this one, where Del Monte appears to have lawful facial policies and paid substantial amount of overtime.

---

[5] http://www.ca9.uscourts.gov/content/faq.php, at ¶¶17-18, last visited on February 16, 2024.

1  Thus, Plaintiff faced a significant risk that their claims would not be certified, and/or they would
2  not prevail at trial, should this litigation continue. Accordingly, this factor weighs in favor of final
3  approval.

### E. The Amount Offered in Settlement Favors Final Approval

As the Ninth Circuit observed, "the very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)). Thus, when evaluating the amount offered in settlement, the Court should consider "the complete package taken as a whole," and the amount should "not be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.*, at 625-28.

Here, the settlement was reached after hard-fought, contentious arms'-length negotiations to agree upon and finalize the settlement agreement. Markham Decl., ¶4. The Settlement amount of $2,000,000, which represents nearly 15% of the maximum realistic exposure for Plaintiffs' class wage and hour claims, warrants final approval.[6] *See Bellinghausen v. Tractor Supply Co.*, 303 F.R.D. 611, 623-24 (N.D. Cal. 2014) (finding settlement amount of a wage and hour class action that equaled between 9% and 27% of the total potential liability was fair, adequate and reasonable given the uncertainty of continued litigation); *Thomas v. Cognizant Tech. Sols. U.S. Corp.*, 2013 WL 12371622, at *6 (C.D. Cal. June 24, 2013) (granting final approval in wage and hour action where settlement encompassed between 4.4% and 5% of the maximum estimated liability figure).

Also, the Settlement Amount is non-reversionary[7] and does not require Class Members to submit a claim; accordingly, the entire Net Settlement Fund is available for automatic payment to Class Members who do not opt out of the Settlement. Markham Decl., ¶17.

Thus, this factor warrants final approval.

### F. The Stage of the Pleadings and Extent of Discovery Favor Final Approval

"A court is more likely to approve a settlement if most of the discovery is completed because

---

[6] *See Kullar* analysis presented in Plaintiffs' motion for preliminary approval, filed on December 4, 2023. Dkt. No. 41-1 at section IV(A)3.
[7] Any of the uncashed $50,000 FLSA allocation payments will return to Del Monte, but Del Monte would not receive a FLSA release in this scenario. Settlement Agreement, ¶¶1.20, 3.1, 3.2.5.

it suggests that the parties arrived at a compromise based on a full understanding of the legal and factual issues surrounding the case." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 527 (quoting 5 W. Moore, Moore's Federal Practice, §23.85[2][e] (Matthew Bender 3d ed.)). However, the Settlement can be approved even in the absence of any discovery, if other factors are satisfied. *In re TD Ameritrade Account Holder Litig.*, 2011 WL 4079226, at *6 (N.D. Cal. Sept. 13, 2011). The bottom line is that "the parties have sufficient information to make an informed decision about settlement." *Durham v. Cont'l Cent. Credit, Inc.*, 2011 WL 90253, at *3 (S.D. Cal. Jan. 10, 2011), citing *Linney v. Cellular Alaska Partnership*, 151 F.3d 1234, 1239 (9th Cir. 1998).

Here, before settling this action, the parties had a thorough understanding of their respective claims and defenses. At the time the Settlement Agreement was finalized, the parties had been litigating their action for over a year. The parties have spent significant time investigating this action and conducting discovery, as well as reviewing Del Monte's CBAs and Plaintiffs' conducted research to prepare their opposition to Defendant's motion to compel. Markham Decl., ¶¶3-4, 7, 9. Defendant produced voluminous documents and data, including Del Monte's policies, and a sample of time and pay records. *Id.*, ¶3.

Further, the parties participated in an all-day mediation session with an experienced mediator. *Id.*, ¶4. "The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *G.F. v. Contra Costa County*, 2015 WL 4606078, at *13 (N.D. Cal. July 30, 2015). Before the mediation, the parties submitted mediation briefs containing damages models. With the help of the mediator, the parties' respective positions and strengths and weaknesses of their claims and defenses were assessed. Markham Decl., ¶4. "As a result, the true value of the class's claims was well-known." *Young v. Polo Retail, LLC,* 2007 WL 951821, at *4 (N.D. Cal. Mar. 28, 2007). Thus, this factor weighs in favor of final approval.

### G. The View of Experienced Counsel Favors Final Approval

In contemplating the approval of a proposed settlement, "[t]he recommendations of plaintiff's counsel should be given a presumption of reasonableness." *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *4 (N.D. Cal. Feb. 2, 2009), citing *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 622 (N.D. Cal. 1979). In fact, "[p]arties represented by competent counsel are better

11

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *Rodriguez v. West Publ'g Corp.,* 563 F.3d 948, 967 (9th Cir. 2009) (citing *In re Pac. Enters. Sec. Litig., supra*, 47 F.3d at 378); *see also In re Netflix Privacy Litig.*, 2013 WL 1120801, at *8 (N.D. Cal. Mar. 18, 2013).

Plaintiff's counsel has extensive experience litigating complex class actions. Markham Decl., ¶¶18-24; *see also* Declarations of Walter L. Haines and Michael D. Singer, submitted in support of Plaintiffs' motion for approval of attorneys' fees on March 25, 2024 (Dkt. Nos. 58-3 and 58-4), at ¶2 and ¶¶7-9, respectively. Counsel is familiar with the settlement negotiation process and knows how to achieve favorable outcome for the Class.  Markham Decl., ¶26; *see also Collado v. Toyota Motor Sales, U.S.A., Inc.*, 2011 WL 5506080, at *1 (C.D. Cal. Oct. 17, 2011) (partially reversed on different grounds) ("Given counsel's substantial experience with class action settlements and opinion that the settlement is in the best interest of the class, the Court likewise agrees.")  In their experience, Plaintiffs' Counsel have no doubt this Settlement affords Class Members substantial benefits. Markham Decl., ¶27. Plaintiff Counsel's views on this Settlement are aligned with the views of the independent mediator, because this Settlement was reached with the mediator's assistance. *Id*., ¶4. Accordingly, this factor weighs in favor of final approval.

### H. The Class's Reaction to the Proposed Settlement Favors Final Approval

The class reaction to the proposed Settlement has been overwhelmingly favorable. The Notice was mailed to Class Members on March 15, 2024, in the form and manner agreed upon by the Parties in the Settlement Agreement, and approved by the Court. Butler Supp. Decl., ¶4. Zero Class Members have opted out, and zero have objected to the settlement, attorneys' fees, or Plaintiffs' service awards.[8]  *Id*., ¶¶7-8. The deadline to object or opt out is on April 29, 2024, and the administrator will supplement its declaration following that date. *Id*., ¶¶5, 11. The absence of any objections or opt outs to the proposed Settlement raise a strong presumption that the terms of

---

[8] Class Members had the opportunity to inspect class counsel's fee motion, filed on March 25, 2024, before their deadline to object to the settlement or the requested attorneys' fees passed.  *In re Mercury Interactive Corp. Sec. Litig.,* 618 F.3d 988, 993–94 (9th Cir. 2010). For convenient access by the Class Members, the fee motion was posted on the settlement website on the same day it was filed with the Court. Butler Supp. Decl., ¶10.

12

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

the Settlement are favorable to the class. *Martin v. AmeriPride Servs.*, 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011); *In re Omnivision Techs., supra*, 559 F.Supp. at 1043 ("By any standard, the lack of objection of the Class Members favors approval of the Settlement."); *Browne v. American Honda Motor Co., Inc.*, 2010 WL 9499072, at *15 (C.D. Cal. July 29, 2010) ("The comparatively low number of opt-outs…indicates that generally, class members favor the proposed settlement and find it fair."); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007).

Thus, the reaction of the Class creates a strong presumption that the Settlement is fair and adequate.

## I. The Balanced Factors Weigh in Favor of Final Approval

"Ultimately, the district court's determination [regarding the fairness and adequacy of a proposed settlement] is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). "[I]t must be not overlooked that voluntary conciliation and settlement are preferred means of dispute resolution. This is especially true in complex class action litigation." *Id*. Here, all relevant factors, individually, and taken as a whole, weigh in favor of final approval of the Settlement.

## VII. NOTICE TO THE CLASS SATISFIES DUE PROCESS.

A notice of settlement must be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. Proc. 23(c)(2)(B). "The hallmark of an adequate notice is reasonableness." *Cohorst v. BRE Properties, Inc.*, 2012 WL 153754, at *2 (S.D. Cal. Jan. 18, 2012), citing *Eisen* v. *Carlisle & Jacqueli*n, 417 U.S. 156, 165 (1974). The manner of giving notice and the content of the notice should "present information about a proposed settlement neutrally, simply, and understandably." *Rodriguez, supra* 563 F.3d at 962.

Here, Plaintiffs complied with the Court-approved Notice plan. The Notices were mailed to all 4,952 Class Members on March 15, 2024. Butler Supp. Decl., ¶4. Appropriate searches were performed to ensure that the addresses of Class Members were accurate and updated. *Id.; see also* Dkt. No. 58-5, Butler Decl., ¶7; Butler Supp. Decl., ¶4. With respect to the notices that were

13

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

1  returned without a forwarding address, the Administrator performed trace searches to ascertain the
2  Class Member's current address using Accurint, a reputable research tool owned by Lexis-Nexis,
3  and resent the notice to that address. Butler Supp. Decl., ¶4. Ultimately, 37 notices were
4  undeliverable. *Id*. The Supreme Court has found that a Notice delivered via mail is sufficient if the
5  notice is "reasonably calculated … to apprise interested parties of the pendency of the action and
6  afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust*
7  *Co.*, 339 U.S. 306, 314 (1950).

8      Here, the Notice package was highly informative, as it advised Class Members, in simple
9  terms, of: (1) the factual and procedural background of this action, (2) the terms of the Settlement,
10 (3) the method of allocation of Settlement payment among Class Members, (4) Class Members'
11 rights to exclude themselves from, or object to this Settlement, or dispute the number of estimated
12 workweeks worked, and (5) Class Members' right to attend the final approval hearing. Dkt. No. 58-
13 5, Butler Decl., filed on March 25, 2024, Ex. A. The Notice also informed Class Members of the
14 amounts that were being requested in attorneys' fees, costs, and Class Representative's service
15 award. *Id*.

16     Lastly, the Settlement Administrator established and maintained a toll-free telephone line,
17 as well as a website (www.simpluris.com/case-search/) through which Class Members are
18 reminded of important settlement deadlines, are able to obtain case relevant documents, or contact
19 case representatives with any case related questions.  Dkt. 58-5, Butler Decl., ¶¶4, 10.

20     In sum, the Notice plan was carefully tailored to apprise Class Members of the Settlement
21 and this approval process.  Thus, the Notice is reasonable and satisfies due process and the
22 requirements of California law.

### VIII.   CONCLUSION

24     In the judgment of Plaintiffs and Class Counsel, the proposed Settlement is fair, reasonable
25 and adequate, and provides substantial benefits to Class Members. Plaintiffs respectfully request
26 that the Court grant final approval of this Settlement.

27     //
28     //

14

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 3:22-cv-04919-RMI
Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Final Approval

Dated: April 22, 2024

Respectfully submitted,

s/ David R. Markham
Attorney for Plaintiff and Class
E-mail: dmarkham@markham-law.com