1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

DEREK STEWART, an individual, and
JAVONTE WILLIAMS, an individual, on behalf
of themselves and all others similarly situated,

                         Plaintiffs,

       v.

DEL MONTE FOODS, INC., a Delaware
corporation,

                         Defendant.

**Case No.: 1:22-CV-04919-RMI**
**CLASS AND PAGA REPRESENTATIVE**
**ACTION**

**[PROPOSED] ORDER GRANTING**
**FINAL APPROVAL OF CLASS AND**
**REPRESENTATIVE ACTION**
**SETTLEMENT AND FINAL**
**JUDGMENT**

Date:       May 28, 2024
Time:       11:00 a.m.
Judge: Hon.  Robert M. Illman
Courtroom:  Eureka-McKinleyville
                 Courthouse

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

The Motion for Final Approval of Class Action Settlement came before this Court on May 28, 2024.

**WHEREAS**, the Court granted preliminary approval of the Joint Stipulation of Class and PAGA Settlement Agreement and Class Notice ("Settlement Agreement") on January 16, 2024.

**WHEREAS**, Plaintiffs Derek Stewart and Javonte Williams have applied to the Court for an order granting final approval of the Settlement Agreement.

**WHEREAS**, the Settlement Agreement sets forth the terms and conditions of the proposed Settlement and for entry of an order of final approval and entry of final judgment thereon. The Court having read and considered Plaintiffs' Motion for Final Approval of Class and Representative Action Settlement; Motion for Approval of Approval of Attorneys' Fees, Costs and Class Representatives' Service Payments; the Declarations of David R. Markham, Michael Singer, Walter L. Haines, Plaintiffs Derek Stewart and Javonte Williams, and Mary Butler of Simpluris, Inc., and the supporting documents annexed thereto, now finds:

**NOW THEREFORE, GOOD CAUSE APPEARING, IT IS HEREBY ORDERED:**

1.  All defined terms contained herein shall have the same meanings as set forth in the Settlement Agreement filed with this Court on December 5, 2023 (Dkt. No. 44-2), which is attached hereto as **Exhibit 1** and incorporated by reference.

2.  The Court has personal jurisdiction over all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Settlement.

3.  The terms of the Settlement are fair, just, reasonable, and adequate, to the Settlement Class and to each Settlement Class Member and the Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated.

4.  The Settlement is ordered finally approved, and that all terms and provisions of the Settlement should be and hereby are ordered to be consummated.

5.  The Parties are hereby directed to perform the terms of the Settlement as described in the Settlement Agreement according to its terms and provisions.

6.  The Settlement Agreement is binding on Plaintiffs and all other Settlement Class

1

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

1 │ Members, except those who timely and properly submitted Requests for Exclusions, as well as their

2 │ heirs, executors, and administrators, successors, and assigns.

3 │       7.      There are ~~zero valid~~ **two** requests for exclusion.

4 │       8.      There are zero objections.

5 │       9.      It is ordered that the Settlement Class is certified for settlement purposes only. The

6 │ Court finds that with respect to the Settlement Class and for purposes of approving this Settlement

7 │ only that: (a) the members of the Settlement Class are ascertainable and so numerous that joinder

8 │ of all members is impracticable; (b) there are questions of law or fact common to the Settlement

9 │ Class with respect to the subject matter of the Action; (c) the claims of Class Representative

10 │ Plaintiffs Derek Stewart and Javonte Williams are typical of the claims of the members of the

11 │ Settlement Class; (d) the Class Representatives have fairly and adequately protected the interests

12 │ of the members of the Settlement Class; (e) a class action is superior to other available methods for

13 │ an efficient adjudication of this controversy; and (f) the Class Counsel are qualified to serve as

14 │ counsel for Plaintiffs in their individual and representative capacities for the Class.

15 │       10.      The Court finds that the Notice and notice methodology implemented pursuant to

16 │ this Settlement: (i) constituted the best practicable notice; (ii) constituted notice that was reasonably

17 │ calculated, under the circumstances, to apprise Settlement Class Members of the pendency of the

18 │ Action, their right to object to or exclude themselves from the proposed Settlement and their right

19 │ to appear at the Final Settlement Hearing; (iii) were reasonable and constituted due, adequate and

20 │ sufficient notice to all persons entitled to receive notice; and (iv) satisfied requirements of law and

21 │ due process. The Court also finds that the Notice and notice methodology implemented fully

22 │ complied with Federal Rule of Civil Procedure 23(c)(2).

23 │       11.      The Court finds that notice on the "appropriate federal official" and "appropriate

24 │ state officials" fully complied with 28 U.S.C § 1715.

25 │       12.      The Settlement Class is hereby made final. The Settlement Class is defined as: All

26 │ current or former non-exempt production persons employed by Defendant in California during the

27 │ Class Period, who do not opt out of the Settlement.

28 │       13.      The Class Period is August 29, 2018 to November 26, 2023.

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

1    14.    The FLSA Period is August 29, 2019 to November 26, 2023.

2    15.    The PAGA Period in June 22, 2021 to November 26, 2023.

3    16.    The Settlement Agreement is not an admission by Defendant, nor is this Final Order

4    a finding of the validity of any allegations or of any wrongdoing by Defendant.  Neither this Final

5    Order, the Settlement, nor any document referred to herein, nor any action taken to carry out the

6    Settlement, shall be construed or deemed an admission of liability, culpability, negligence, or

7    wrongdoing on the part of Defendant.

8    17.    Pursuant to the Settlement Agreement, upon entry of this Final Order, Plaintiffs and

9    each Participating Class Member shall fully release and discharge the Released Parties pursuant to

10    the following release, which provides: All Participating Class Members, on behalf of themselves

11    and their respective former and present representatives, agents, attorneys, heirs, administrators,

12    successors, and assigns, release Released Parties from any claims, wages, premiums, fringes,

13    liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged

14    against Released Parties arising out of the facts, circumstances, and primary rights at issue in the

15    Operative Complaint and any amendments, including all claims for: (1) failure to provide one day's

16    rest in seven; (2) minimum wage; (3) overtime and double time under California law; (4) meal

17    periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting

18    time penalties, (9) unfair competition; and (10) PAGA penalties for these alleged violations. This

19    Release of Class and PAGA claims includes known and unknown claims arising under California

20    Labor Code sections 201-203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558,

21    1182.12, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage

22    Order(s), and the California Unfair Competition Law, Business and Professions Code section

23    17200, et seq., as well as all claims arising under the listed Labor Code statutes based on the primary

24    rights of those statutes, irrespective of the theory of recovery alleged. The released claims include,

25    but are not limited to, claims based on factual allegations regarding radio use during meal and rest

26    periods, inability to take full and/or uninterrupted meal and rest periods due to work demands,

27    rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of

28    meal periods, failure to adequately document time records (including meal periods), failure to pay

3

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay. Except as set forth in Paragraph 5.3 and Paragraph 5.4 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the FERA, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period.

18.    Pursuant to the Settlement Agreement, upon entry of this Final Order, Plaintiffs and each Participating FLSA Member shall fully release and discharge the Released Parties pursuant to the following release, which provides: All Participating FLSA Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from any claims, wages, premiums, fringes, liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged against Released Parties arising out of the facts, circumstances, and primary rights at issue in the Operative Complaint and any amendments, including all claims for overtime under federal law (FLSA) based on the primary rights of those statutes, irrespective of the theory of recovery alleged in the Operative Complaint.

19.    Pursuant to the Settlement Agreement, upon entry of this Final Order, Plaintiffs and each Aggrieved Employee shall fully release and discharge the Released Parties pursuant to the following release, which provides: All Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice and ascertained in the course of the Action, including all claims for violations related to: (1) failure to provide one day's rest in seven; (2) minimum wage; (3) overtime and double time under California law; (4) meal periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting time penalties; (9) unfair competition; and (10) PAGA penalties for these alleged violations. This Release of Class and PAGA claims includes known and unknown claims arising under California Labor Code sections 201-203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558, 1182.12,

4

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage Order(s), and the California Unfair Competition Law, Business and Professions Code section 17200, *et seq.,* as well as all claims arising under the listed Labor Code statutes based on the primary rights of those statutes, irrespective of the theory of recovery alleged. The released claims include, but are not limited to, claims based on factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay.

20. Plaintiffs and all Settlement Class Members who have not been timely and properly excluded from the Settlement Class, and any person acting on their behalf, are permanently barred and enjoined from: (i) filing, commencing, prosecuting, intervening in, participating in (as class members or otherwise), or receiving any benefits or other relief from, any other lawsuit, in any state or federal court, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction based on the Released Claims; and (ii) organizing such non-excluded Class Members into a separate class for purposes of pursuing as a purported class action (including by seeking to amend a pending complaint to include class allegations, or by seeking class certification in a pending action) any lawsuit based on or relating to the Released Claims.

21. The Settlement Agreement provides that the Gross Settlement Amount is $2,000,000.00. The Net Settlement Amount shall be determined according to the terms of the Settlement Agreement as approved herein. The Court orders the calculations and the payments to be made and administered in accordance with the terms of the Settlement Agreement.

22. The Court hereby finds that Plaintiffs and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the settlement.

23. The Court confirms The Markham Law Firm, United Employees Law Group, and Cohelan Khoury and Singer as Class Counsel.

///

5

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

24.     The Court finds and determines that the Individual Settlement Payments to be paid to Participating Class Members as provided by the Settlement Agreement are fair and reasonable. The Court gives final approval to and orders payment of those amounts to be made to Participating Class Members in accordance with the Settlement Agreement.

25.     The Court finds and determines that the PAGA Penalties in the amount of $60,000.00 is fair, reasonable, and appropriate. The Court further finds the allocation of the PAGA payment, seventy-five percent (75%) of the PAGA Penalties being allocated to the LWDA in the amount of $45,000.00 and the remaining twenty-five percent (25%) in the amount of $15,000.00 shall be allocated to the PAGA Employees, as fair, reasonable, and appropriate.

26.     The Court finds and determines that the fees and expenses in administering the Settlement incurred by Simpluris, Inc. in the amount of $32,470 is fair and reasonable. The Court gives final approval to and orders payment of that amount in accordance with the Settlement.

27.     The Court finds and determines that the Class Representatives' Service Payments in the sum of $15,000.00 each to Plaintiff Derek Stewart and Plaintiff Javonte Williams are fair and reasonable. The Court hereby orders the Settlement Administrator make these payments to Plaintiffs Derek Stewart and Javonte Williams in accordance with the terms of Settlement Agreement.

28.     Pursuant to the terms of the Settlement, and the authorities, evidence and argument submitted by Class Counsel, the Court awards Class Counsel attorneys' fees in the sum of $666,666.67, and litigation costs of $13,593.44. The Court finds such amounts to be fair and reasonable. The Court orders the Settlement Administrator to make these payments in accordance with the terms of the Settlement Agreement.

29.     If a Participating Class Member or PAGA Employee does not cash his or her settlement check within 180 calendar days, the Settlement Administrator shall send the unclaimed monies to the State of California Office of the Controller Unclaimed Property Fund in the name of the Participating Class Members or Aggrieved Employees who did not cash his/her Settlement check.

///

6

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

30.     If a FLSA Participating Class Member does not cash his or her settlement check within 180 calendar days, the Settlement Administrator shall return the unclaimed monies to the Defendant, as no FLSA release will be effectuated as to those individuals.

31.     Defendant shall have no further liability for costs, expenses, interest, attorneys' fees, or for any other charge, expense, or liability, except as provided for in the Settlement Agreement.

32.     The Parties are authorized, without further approval from the Court, to agree to and to adopt such amendments, modifications and expansions of this Stipulation and all exhibits attached hereto as (i) are consistent with the Final Judgment; and (ii) do not limit the rights of Settlement Class Members under the Stipulation.

33.     With the consent of the Parties, without affecting the finality of the Final Judgment, the Court shall retain continuing jurisdiction over the Action, the Parties, and the Settlement Class, as well as the administration and enforcement of the Settlement. Any disputes or controversies arising with respect to the interpretation, consummation, enforcement, or implementation of the Settlement shall be presented by motion to the Court; provided however, that nothing in this Paragraph shall restrict the ability of the Parties to exercise their rights to terminate the Settlement pursuant to the terms of the Settlement Agreement.

34.     Nothing in this order shall preclude any action to enforce the Parties' obligations under the Settlement or under this order, including the requirement that Defendant make payments to the participating Settlement Class Members in accordance with the Settlement.

35.     Upon completion of administration of the Settlement, the Settlement Administrator will provide written certification of such completion to the Court and counsel for the Parties which shall be filed with the Court on or before March 28, 2025.

36.     This Final Order shall constitute a final judgment.

37.     Except as provided in paragraph 33, above, the Court hereby dismisses the action (including all individual claims and Released Claims presented thereby) with prejudice, without fees or costs to any party except as provided in the Settlement Agreement.

38.     The Parties will bear their own costs and attorneys' fees except as otherwise provided by this Court's Order awarding Class Counsels' Award for attorneys' fees and litigation

7

*Stewart et al. v. Del Monte Foods, Inc.*, Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

1    costs.

2

3    DATED: **May 29, 2024**

4                                                  Hon. Robert M. Illman
                                                   United States Magistrate Judge

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Stewart et al. v. Del Monte Foods, Inc.,* Case No. 1:22-cv-04919-RMI
Proposed Order Granting Final Approval of Class and Representative Action Settlement
And Final Judgment

Exhibit 1

<u>**CLASS ACTION AND PAGA SETTLEMENT AGREEMENT AND CLASS NOTICE**</u>

Derek Stewart and Javonte Williams ("Plaintiffs"), on the one hand, and Del Monte Foods, Inc. ("Defendant"), on the other hand, make this Class Action and PAGA Settlement Agreement ("Agreement"). The Agreement refers to Plaintiffs and Defendant collectively as the "Parties," or individually as a "Party."

1. <u>**DEFINITIONS.**</u>

1.1    "Action" means the lawsuit filed by Plaintiffs alleging wage and hour violations against Defendant, entitled *Stewart v. Del Monte Foods, Inc*., Case No. 3:22-CV-04919-AMO (N.D. Cal.).

1.2    "Administrator" means Simpluris, the neutral entity the Parties have agreed to appoint to administer the Settlement.

1.3    "Administration Expenses Payment" means the amount the Administrator will be paid from the Gross Settlement Amount to reimburse its reasonable fees and expenses in accordance with the Administrator's estimated bid of $31,270, submitted to the Court in connection with Preliminary Approval of the Settlement.

1.4    "Aggrieved Employees" or "PAGA Employees" mean all employees in the Class employed by Defendant or suffering alleged violations of PAGA in the State of California at any time during the PAGA Period. No PAGA employee may opt out of being an Aggrieved Employee.

1.5    "Class" means all current or former non-exempt production persons employed by Defendant in California during the Class Period who do not opt out of the Settlement.

1.6    "Class Counsel" means David R. Markham, Maggie K. Realin and Lisa R. Brevard of The Markham Law Firm and Walter L. Haines of United Employees Law Group.

1.7    "Class Counsel Fees Payment" and "Class Counsel Litigation Expenses Payment" mean the amounts awarded by the Court to Class Counsel for reimbursement of reasonable attorneys' fees, up to 1/3 of the Gross Settlement Amount (or $666,666.67) and reasonable out-of-pocket litigation expenses, (not to exceed $20,000), respectively, incurred to prosecute the Action.

1.8    "Class Data" means Class Member identifying information in Defendant's possession, including the Class Member's name, last-known mailing address, Social Security number, and number of Class Period Workweeks, FLSA Period Workweeks, and PAGA Period Workweeks.

1.9    "Class Member" or "Settlement Class Member" means a member of the Class, as either a Participating Class Member or Non-Participating Class Member (including a Non-Participating Class Member who qualifies as an Aggrieved Employee).

1.10 "Class Member Address Search" means the Administrator's investigation and search for current Class Member mailing addresses using all reasonably available sources, methods and means including, but not limited to, the National Change of Address database, skip traces, and direct contact by the Administrator with Class Members.

1.11 "Class Notice" means the COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT AND HEARING DATE FOR FINAL COURT APPROVAL, which the Administrator will mail to Class Members in English and Spanish in the form, without material variation, attached as **Exhibit A** and incorporated by reference into this Agreement.

1.12 "Class Period" means August 29, 2018 until (a) the date the Court grants preliminary approval of this settlement, (b) November 26, 2023, or (c) a date prior of Defendant's choosing as set forth in Paragraph 9 herein.

1.13 "Class Period Workweek(s)" means any week during which a Class Member worked for Defendant during the Class Period.

1.14 "Class Representatives" mean the named plaintiffs in the Action, Derek Stewart and Javonte Williams, who are seeking Court approval to serve as Class Representatives.

1.15 "Class Representatives' Service Payments" means the payments to the Class Representatives for initiating, prosecuting, and providing services in support of the Action, in an amount up to $15,000 per plaintiff, as approved by the Court.

1.16 "Court" means the United States District Court for the Northern District of California.

1.17 "Defense Counsel" means Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

1.18 "Effective Date" means the date upon which both of the following have occurred: (i) final approval of the Settlement has been granted by the Court; and (ii) the Court's Judgment approving the settlement becomes Final. Final means the latest of: (i) if there is an appeal of the Court's Judgment, the date the Judgment is affirmed on appeal, the date of dismissal of such appeal, or the expiration of the time to file a petition for review with the California Supreme Court or other court in California assuming jurisdiction of this matter, or, (ii) if a petition for review is filed, the date of denial of the petition, or the date the Court's Judgment is affirmed pursuant to such petition; or (iii) if no appeal is filed, the expiration date of the time for filing or noticing any appeal of the Court's Judgment. Under no circumstances will the Effective Date be less than 61 days from the date of notice of entry of the Court's Judgment. If a timely objection to settlement is filed (including an objection from the LWDA), and it was not withdrawn, "Effective Date" is the later of: (a) the date on which the time for all appeals relating to objections to Settlement and the Final Approval Order has expired; or (b) if an appeal, review or writ is sought, the date on which the highest reviewing court renders its decision denying any petition (where the immediately lower court affirmed the judgment) or affirming the judgment. Provided, however, if the California Labor & Workforce Development Agency ("LWDA") has commenced an investigation or issued a Citation prior to the Effective Date, as determined under the forgoing definition, the Effective Date will be extended to the date that the LWDA concludes its investigation or

resolves the Citation (whichever is later), or if the LWDA objects to the Settlement, the date when the LWDA's objection to the Settlement is resolved and no longer appealable.

1.19  "FLSA" means the Fair Labor Standards Act of 1938, 29 U.S.C. § 203 *et seq.*

1.20  "FLSA Allocation" means the total amount the Administrator will pay from the Gross Settlement Amount in settlement of the FLSA claims. Any checks issued out of the FLSA Allocation that are cancelled due to a failure to deposit or cash the check within one hundred and eighty (180) days shall be returned to Defendant, as no FLSA release will be effectuated as to those individuals.

1.21  "FLSA Participating Member" means mean all employees in the Class employed by Defendant in the State of California at any time during the FLSA Period who opt in to the Settlement by endorsing, cashing, or depositing the settlement check.

1.22  "FLSA Member" means mean all employees in the Class employed by Defendant in the State of California at any time during the FLSA Period.

1.23  "FLSA Payment" means the individual pro rata shares of the Net Settlement Amount calculated according to the number of FLSA Workweeks of FLSA Participating Members.

1.24  "FLSA Period" means August 29, 2019 to the date when the Class Period ends.

1.25  "FLSA Workweek(s)" means any workweek during which an FLSA Member worked for Defendant for at least one day during the FLSA Period.

1.26  "Final Approval" means the Court's order granting final approval of the Settlement.

1.27  "Final Approval Hearing" means the Court's hearing on the Motion for Final Approval of the Settlement.

1.28  "Final Judgment" means the Judgment Entered by the Court upon Granting Final Approval of the Settlement.

1.29  "Gross Settlement Amount" means $2,000,000.00, which is the total amount Defendant agrees to pay under the Settlement, except as provided in Paragraph 9 below. The Gross Settlement Amount will fund the Individual Class Payments, FLSA Payments, Individual PAGA Payments, the LWDA PAGA Payment, Class Counsel Fees, Class Counsel Expenses, Class Representatives' Service Payments, and the Administrator's Expenses.

1.30  "Individual Class Payment" means the Participating Class Member's pro rata share of the Net Settlement Amount calculated according to the number of Class Period Workweeks.

1.31  "Individual PAGA Payment" means the Aggrieved Employee's pro rata share of 25% of the PAGA Penalties calculated according to the number of PAGA Period Workweeks.

1.32  "Judgment" means the judgment entered by the Court based upon the Final Approval.

1.33 "LWDA" means the agency entitled California Labor and Workforce Development Agency under Labor Code Section 2699, subd. (i).

1.34 "LWDA PAGA Payment" means the 75% of the PAGA Penalties paid to the LWDA under Labor Code Section 2699, subd. (i).

1.35 "Net Settlement Amount" means the Gross Settlement Amount, less the following payments in the amounts approved by the Court: Individual PAGA Payments, the FLSA Allocation, the LWDA PAGA Payment, Class Representatives' Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and the Administration Expenses Payment. The Administrator will pay the remainder to Participating Class Members as Individual Class Payments.

1.36 "Non-Participating Class Member" means any Class Member who opts out of the Settlement by sending the Administrator a valid and timely Request for Exclusion. No employee or former employee may opt out of being an Aggrieved Employee.

1.37 "Non-Participating FLSA Member" means any FLSA Member who does not opt in to the Settlement by not cashing the FLSA Payment.

1.38 "Operative Complaint" means the operative complaint in the Action.

1.39 "PAGA" means the Private Attorneys General Act (Labor Code §§ 2698, et seq.).

1.40 "PAGA Notice" means Plaintiffs' letters to Defendant and the LWDA providing notice pursuant to Labor Code Section 2699.3, subd. (a) to include claims for PAGA penalties based on the claims alleged or related to the claims in the Operative Complaint.

1.41 "PAGA Penalties" means the total amount of PAGA civil penalties the Administrator will pay from the Gross Settlement Amount, allocated 25% to the Aggrieved Employees and the 75% to LWDA in settlement of PAGA claims.

1.42 "PAGA Period" means June 22, 2021 to the date when the Class Period ends.

1.43 "PAGA Period Workweek(s)" means any workweek during which an Aggrieved Employee worked for Defendant for at least one day during the PAGA Period.

1.44 "Participating Class Member" means a Class Member who does not submit a valid and timely Request for Exclusion from the Settlement.

1.45 "Preliminary Approval" means the Court's Order Granting Preliminary Approval of the Settlement.

1.46 "Preliminary Approval Order" means the proposed Order Granting Preliminary Approval and Approval of the Settlement.

1.47 "Released Class Claims" means the claims being released as described in Paragraph 5.2 below.

1.48  "Released FLSA Claims" means the claims being released as described in Paragraph 5.3 below.

1.49  "Released PAGA Claims" means the claims being released as described in Paragraph 5.4 below.

1.50  "Released Parties" means: Defendant, and its former and present directors, officers, shareholders, owners, members, employees, managing agents, attorneys, insurers, predecessors, successors, assigns, and Defendant's subsidiaries, affiliates, and or related companies.

1.51  "Request for Exclusion" means a Class Member's submission of a written request to be excluded from the Class Settlement signed by the Class Member.

1.52  "Response Deadline" means 45 days after the Administrator mails Notice to Class Members and Aggrieved Employees, and will be the last date on which Class Members may: (a) mail Requests for Exclusion from the Settlement, or (b) file his or her Objection to the Settlement. Class Members to whom the Administrator resends Notice Packets after having been returned undeliverable will have an additional 14 calendar days beyond the date the Response Deadline has expired. The Administrator will determine the timeliness of submitted Request for Exclusion Forms by valid postmark or timestamp for email or facsimile submissions.

1.53  "Settlement" means the disposition of the Action effectuated by this Agreement and the Judgment.

1.54  "Workweek(s)" means any workweek(s) worked during the Class Period, FLSA Period, and/or PAGA Period by Class Members, FLSA Members or PAGA Employees. A partial workweek will be counted as a full workweek. Although a workweek may be both a workweek in the Class Periods, FLSA Period, and/or the PAGA Period, it will be counted as one unique workweek with respect to the total number of workweeks.

## 2.   RECITALS.

2.1  Plaintiff commenced this lawsuit on August 29, 2022.

2.2  In their Operative Complaint, Plaintiffs allege claims for violations related to: (1) overtime under federal law (FLSA); (2) failure to provide one day's rest in seven; (3) minimum wage; (4) overtime and double time under California law; (5) meal periods; (6) rest periods; (7) inaccurate wage statements; (8) expense reimbursements; (9) waiting time penalties, (10) unfair competition; and (11) PAGA penalties for these alleged violations. Defendant denies the allegations in the Operative Complaint, denies any failure to comply with the laws identified in the Operative Complaint, and denies any and all liability for the causes of action asserted in the Operative Complaint.

2.3  Pursuant to Labor Code Section 2699.3, subd. (a), Plaintiffs gave written notice to Defendant and the LWDA by sending the PAGA Notice.

2.4     On August 2, 2023, the Parties participated in a one-day mediation presided over by Louis Marlin, Esq., which led to resolution of the Action.

2.5     Plaintiffs obtained statistical data regarding the Aggrieved Employees and Class Members, payroll records, time records, and employment policies and records. Plaintiffs conducted a sufficient investigation to satisfy the criteria for court approval.

2.6     The Court has not granted class certification or collective action certification.

**3.     MONETARY TERMS.**

3.1     Gross Settlement Amount. Except as otherwise provided by Paragraph 9 below, Defendant agrees to pay $2,000,000.00 and no more as the Gross Settlement Amount, and to separately pay any and all employer-side payroll taxes on the portion of the Net Settlement Amount that is attributable to employee wage payments. Defendant has no obligation to pay the Gross Settlement Amount (or any payroll taxes) prior to the deadline stated in Paragraph 4.2 of this Agreement. The Administrator will disburse the entire Gross Settlement Amount without asking or requiring Participating Class Members or Aggrieved Employees to submit any claim as a condition of payment. FLSA Members must opt in to receive an FLSA Payment. None of the Gross Settlement Amount will revert to Defendant, except that any checks issued out of the FLSA Allocation that are cancelled due to a failure to deposit or cash the check within one hundred and eighty (180) days shall be returned to Defendant, as no FLSA release will be effectuated as to those individuals.

3.2     Payments from the Gross Settlement Amount. The Administrator will make and deduct the following payments from the Gross Settlement Amount, in the amounts specified by the Court in the Final Approval:

3.2.1     To Plaintiffs: Class Representatives' Service Payments to the Class Representatives of not more than $15,000 each (in addition to any Individual Class Payment, FLSA Payment, and any Individual PAGA Payment the Class Representative is entitled to receive as a Participating Class Member and FLSA Participating Member). As part of the motion for Class Counsel Fees Payment and Class Litigation Expenses Payment, Plaintiffs will seek Court approval for any Class Representatives' Service Payments no later than 14 days prior to the end of the notice period, and at least 35 days  prior to the Final Approval Hearing. Defendant will not oppose Plaintiffs' request for Class Representatives' Service Payments that do not exceed these amounts. If the Court approves Class Representatives' Service Payments less than the amount requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Court's approval of the Service Payments is not a material term of the Settlement. If the Court does not approve or approves only a lesser amount than that requested by Plaintiffs for their Service Payments, the other terms of the Settlement shall still apply. The Court's refusal to approve the Service Payments requested by Plaintiffs do not give any basis to abrogate the Settlement. The Administrator will pay the Class Representatives' Service Payments using IRS Form 1099. Plaintiffs assume full responsibility and liability for employee taxes owed on the Class Representatives' Service Payments.

Plaintiffs agree to indemnify and hold Defendant harmless from any claim or liability for taxes, penalties, or interest arising as a result of the Service Payments.

3.2.2   <u>To Class Counsel</u>: A Class Counsel Fees Payment of not more than 33.33% of the Gross Settlement Amount, and a Class Counsel Litigation Expenses Payment of not more than $20,000.00, based on reasonable out-of-pocket litigation expenses. Plaintiffs and/or Class Counsel will file a motion for Class Counsel Fees Payment and Class Litigation Expenses Payment no later than 14 days prior to the end of notice period and no later than 35 days prior to the Final Approval Hearing. If the Court approves a Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment less than the amounts requested, the Administrator will allocate the remainder to the Net Settlement Amount. The Court's approval of fees and costs requested by Class Counsel is not a material term of the Settlement. If the Court does not approve or approves only a lesser amount than that requested by Class Counsel for attorneys' fees or costs, the other terms of the Settlement shall still apply. The Court's refusal to approve the Class Counsel Fees Payment and/or a Class Counsel Litigation Expenses Payment requested by Class Counsel does not give Plaintiffs or Class Counsel any basis to abrogate the Settlement. Released Parties will have no liability to Class Counsel or any other Plaintiff's Counsel arising from any claim to any portion any Class Counsel Fee Payment and/or Class Counsel Litigation Expenses Payment. The Administrator will pay the Class Counsel Fees Payment and Class Counsel Expenses Payment using one or more IRS 1099 Forms. Class Counsel assumes full responsibility and liability for taxes owed on the Class Counsel Fees Payment and the Class Counsel Litigation Expenses Payment and holds Defendant harmless, and indemnifies Defendant, from any dispute or controversy regarding any division or sharing of any of these payments.

3.2.3   <u>To the Administrator:</u> An Administrator Expenses Payment, to the settlement administrator Simpluris, Inc. estimated to be $31,270, except for a showing of good cause and as approved by the Court. To the extent the Administration Expenses are less, or the Court approves payment less than $31,270, the Administrator will allocate the remainder to the Net Settlement Amount.

3.2.4   <u>To Each Participating Class Member</u>: An Individual Class Payment is calculated by (a) dividing the Net Settlement Amount by the total number of Class Period Workweeks worked by all Participating Class Members during the Class Period and (b) multiplying the result by each Participating Class Member's Class Period Workweeks.

3.2.4.1   <u>Tax Allocation of Individual Class Payments</u>. 25% of each Participating Class Member's Individual Class Payment will be allocated to settlement of wage claims (the "Wage Portion"). The Wage Portions are subject to tax withholding and will be reported on an IRS W-2 Form. 75% of each Participating Class Member's Individual Class Payment will be allocated to settlement of claims for interest and penalties (the "Non-Wage Portion"). The Non-Wage Portions are not subject to wage withholdings and will be reported on IRS 1099 Forms. Participating Class Members assume full responsibility and liability for any employee taxes owed on their Individual Class Payment.

3.2.4.2  Effect of Non-Participating Class Members on Calculation of Individual Class Payments. Non-Participating Class Members will not receive any Individual Class Payments. The Administrator will retain amounts equal to their Individual Class Payments in the Net Settlement Amount for distribution to Participating Class Members on a pro rata basis.

3.2.5  To Each FLSA Member: The FLSA Allocation will be in the amount of $50,000.00 to be paid from the Gross Settlement Amount.

3.2.5.1  The Administrator will calculate each FLSA Payment by (a) dividing the FLSA Allocation by the total number of FLSA Workweeks worked by all FLSA Members during the FLSA Period and (b) multiplying the result by each FLSA Members' FLSA Workweeks.

3.2.5.2  Tax Allocation of FLSA Payments. FLSA Payments will be allocated as wages and are subject to tax withholding and will be reported on an IRS W-2 Form.

3.2.5.3  Effect of Non-Participating Class Members. Non-Participating Class Members will not receive any FLSA Payment and will be deemed Non-Participating FLSA Members. The Administrator will retain amounts equal to the Non-Participating FLSA Members' Individual FLSA Payments for distribution to Participating FLSA Members on a pro rata basis. Any checks issued out of the FLSA Allocation to Participating FLSA Members that are cancelled due to a failure to deposit or cash the check within one hundred and eighty (180) days shall be returned to Defendant, as no FLSA release will be effectuated as to those individuals (and they will be deemed a Non-Participating FLSA Member).

3.2.6  To the LWDA and Aggrieved Employees: PAGA Penalties in the amount of $60,000.00 to be paid from the Gross Settlement Amount, with 75% allocated to the LWDA PAGA Payment ($45,000) and 25% allocated to the Individual PAGA Payments ($15,000).

3.2.6.1  The Administrator will calculate each Individual PAGA Payment by (a) dividing the amount of the Aggrieved Employees' 25% share of PAGA Penalties by the total number of PAGA Period Workweeks worked by all Aggrieved Employees during the PAGA Period and (b) multiplying the result by each Aggrieved Employee's PAGA Period Workweeks. Aggrieved Employees assume full responsibility and liability for any taxes owed on their Individual PAGA Payment.

3.2.6.2  If the Court approves PAGA Penalties of an amount different from the amount requested, the Administrator will allocate the difference to the Net Settlement Amount. The Administrator will report the Individual PAGA Payments on IRS 1099 Forms.

## 4.  SETTLEMENT FUNDING AND PAYMENTS.

4.1  Class Data. Not later than 30 days after the Court grants Preliminary Approval of the Settlement, Defendant will deliver the Class Data to the Administrator, in the form of a

Microsoft Excel spreadsheet. The Administrator will not share the Class Data with either Plaintiffs or Class Counsel unless expressly approved by Defendant and Defense Counsel, or if a Class Member requests that their personal data be shared with Class Counsel. To protect Class Members' privacy rights, the Administrator must maintain the Class Data in confidence, use the Class Data only for purposes of this Settlement and for no other purpose, and restrict access to the Class Data to Administrator employees who need access to the Class Data to effect and perform under this Agreement. Defendant has a continuing duty through the Effective Date to notify Class Counsel if they discover that the Class Data omitted a Class Member's identifying information and to provide corrected or updated Class Data as soon as reasonably feasible. Without any extension of the deadline by which Defendant must send the Class Data to the Administrator, the Parties and their counsel will expeditiously use best efforts, in good faith, to reconstruct or otherwise resolve any issues related to missing or omitted Class Data.

4.2     Funding of Gross Settlement Amount. Defendant will fully fund the Gross Settlement Amount, and also fund the amounts necessary to fully pay Defendant's share of payroll taxes by transmitting the funds to the Administrator no later than 30 days after the Effective Date.

4.3     Payments from the Gross Settlement Amount. Within 14 days after Defendant funds the Gross Settlement Amount, the Administrator will mail checks for all Individual Class Payments, FLSA Payments, all Individual PAGA Payments, the LWDA PAGA Payment, the Administration Expenses Payment, the Class Counsel Fees Payment, the Class Counsel Litigation Expenses Payment, and the Class Representatives' Service Payments.

    4.3.1     The Administrator will issue two checks: one for each of the Individual Class Payments and/or Individual PAGA Payments, and another for the FLSA Payments, and send them to the Participating Class Members, FLSA Members, and/or Aggrieved Employees via First Class United States Postal Service ("USPS") mail, postage prepaid. The face of each check will prominently state the date (not less than 180 days after the date of mailing) when the check will be voided, which will be 180 days (hereinafter "Void Date"). The Administrator will cancel all checks not cashed by the Void Date. The Administrator will send checks for Individual Settlement Payments to all Participating Class Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for FLSA Payments to all Participating Class Members who are FLSA Members (including those for whom Class Notice was returned undelivered). The Administrator will send checks for Individual PAGA Payments to all Aggrieved Employees including Non-Participating Class Members who qualify as Aggrieved Employees (including those for whom Class Notice was returned undelivered). The Administrator will send Participating Class Members a single check combining the Individual Class Payment and the Individual PAGA Payment. Before mailing any checks, the Settlement Administrator must update the recipients' mailing addresses using the National Change of Address Database. The Administrator will send a second check for each of FLSA Payments to each FLSA Member, and each check that includes an FLSA Payment will include the following language:

My endorsing, cashing, or depositing of this check constitutes my consent to join the lawsuit entitled Stewart v. Del Monte Foods, Inc., Case No. 3:22-CV-04919-AMO (N.D. Cal.), pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 216(b).

4.3.2   The Administrator must conduct a Class Member Address Search for all other Class Members whose checks are retuned undelivered without USPS forwarding address. Within 7 days of receiving a returned check, the Administrator must re-mail checks to the USPS forwarding address provided or to an address ascertained through the Class Member Address Search. The Administrator need not take further steps to deliver checks to Class Members whose re-mailed checks are returned as undelivered. The Administrator will promptly send a replacement check to any Class Member whose original check was lost or misplaced, requested by the Class Member prior to the void date.

4.3.3   For any Class Member whose check is uncashed and cancelled after the void date, the Administrator will transmit the funds represented by such checks to the California Controller's Unclaimed Property Fund in the name of the Class Member thereby leaving no "unpaid residue." Any FLSA Payments that are cancelled due to a failure to deposit or cash the check within one hundred and eighty (180) days shall be returned to Defendant, as no FLSA release will be effectuated as to those individuals.

4.3.4   The payment of Individual Class Payments, FLSA Payments, and Individual PAGA Payments will not obligate Defendant to confer any additional benefits or make any additional payments to Class Members (such as 401(k) contributions or bonuses) beyond those specified in this Agreement.

## 5.   RELEASES OF CLAIMS.

Effective on the date when Defendant fully funds the entire Gross Settlement Amount and fund all employer payroll taxes owed on the Wage Portion of the Individual Class Payments, Plaintiffs, Class Members, FLSA Members, Aggrieved Employees, and Class Counsel will release claims against all Released Parties as follows:

5.1   Plaintiffs' Release. In addition to the claims released under Paragraphs 5.2 and 5.3 below, each Plaintiff and their former and present spouses, representatives, agents, attorneys, heirs, administrators, successors, and assigns, agree to a general release of any and all claims, transactions, or occurrences against Released Parties—which will include without limitation any and all claims which in any way relate to each Plaintiff's employment with Defendant, under State or Federal law, in tort, common law, statute, contract, or equity, whether pled in the Operative Complaint or not, including but not limited to any claims under the Fair Labor Standards Act ("FLSA"), Title VII, Americans with Disabilities Act ("ADA"), Fair Employment and Housing Act ("FEHA"), Age Discrimination in Employment Act ("ADEA"), PAGA, Labor Code, or any Industrial Welfare Commission Wage Order—now existing or arising in the future, based on any act, omission, event, occurrence, or nonoccurrence from the beginning of time to the date of execution hereof ("Plaintiffs' Release"). Each Plaintiff's Release does not extend to any claims or actions to enforce this Agreement, or to any claims for vested benefits, unemployment benefits, disability benefits,

social security benefits, and workers' compensation benefits that arose at any time, or based on occurrences outside the Class Period. Each Plaintiff acknowledges that Plaintiff may discover facts or law different from, or in addition to, the facts or law that he now knows or believes to be true but agrees, nonetheless, that Plaintiff's Release will be and remain effective in all respects, notwithstanding such different or additional facts or his discovery of them.

5.1.1   Plaintiff's Waiver of Rights Under Civil Code Section 1542. For purposes of Plaintiff's Release, each Plaintiff expressly waives and relinquishes the provisions, rights, and benefits, if any, of Civil Code Section 1542, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, AND THAT IF KNOWN BY HIM OR HER WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY**.

5.2   Release by Participating Class Members: All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from any claims, wages, premiums, fringes, liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged against Released Parties arising out of the facts, circumstances, and primary rights at issue in the Operative Complaint and any amendments, including all claims for: (1) failure to provide one day's rest in seven; (2) minimum wage; (3) overtime and double time under California law; (4) meal periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting time penalties, (9) unfair competition; and (10) PAGA penalties for these alleged violations. This Release of Class and PAGA claims includes known and unknown claims arising under California Labor Code sections 201-203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558, 1182.12, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage Order(s), and the California Unfair Competition Law, Business and Professions Code section 17200, *et seq*., as well as all claims arising under the listed Labor Code statutes based on the primary rights of those statutes, irrespective of the theory of recovery alleged. The released claims include, but are not limited to, claims based on factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay. Except as set forth in Paragraph 5.3 and Paragraph 5.4 of this Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the FEHA, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occurring outside the Class Period.

5.3   Release by Participating FLSA Members: All Participating FLSA Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs,

administrators, successors, and assigns, release Released Parties from any claims, wages, premiums, fringes, liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged against Released Parties arising out of the facts, circumstances, and primary rights at issue in the Operative Complaint and any amendments, including all claims for overtime under federal law (FLSA) based on the primary rights of those statutes, irrespective of the theory of recovery alleged in the Operative Complaint.

    5.3.1   An FLSA Member's check will state: "My endorsing, cashing, or depositing of this check constitutes my consent to join the lawsuit entitled Stewart v. Del Monte Foods, Inc., Case No. 3:22-CV-04919-AMO (N.D. Cal.), pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 216(b)." Any FLSA Member who cashes the FLSA Payment will be considered to have "opted-in" to the settlement of FLSA claims and in addition to waiving the state law claims, the FLSA Member will have also waived any claims available under the FLSA. If a FLSA Member attempts to alter this language on the back of the check, any such alterations will be null and void and have no legal effect.

5.4    <u>Release of PAGA Claims:</u> All Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice and ascertained in the course of the Action, including all claims for violations related to: (1) failure to provide one day's rest in seven; (2) minimum wage; (3) overtime and double time under California law; (4) meal periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting time penalties, (9) unfair competition; and (10) PAGA penalties for these alleged violations. This Release of Class and PAGA claims includes known and unknown claims arising under California Labor Code sections 201-203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558, 1182.12, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage Order(s), and the California Unfair Competition Law, Business and Professions Code section 17200, *et seq*., as well as all claims arising under the listed Labor Code statutes based on the primary rights of those statutes, irrespective of the theory of recovery alleged. The released claims include, but are not limited to, claims based on factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay.

## 6.   <u>AMENDMENT OF COMPLAINT AND NOTICE</u>

6.1    Plaintiffs agree to amend the Operative Complaint and PAGA Notice to allege all factual allegations, claims, and legal theories alleged in the actions and raised at mediation, including, but not limited to,  including factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties),

auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay. Defendant will be given the ability to review the amended complaint and notice prior to filing.

## 7. MOTION FOR PRELIMINARY APPROVAL.

The Parties agree to jointly prepare and file a motion for preliminary approval ("Motion for Preliminary Approval") that complies with the Court's requirements, if any.

7.1  Plaintiffs' Responsibilities. At least seven days before the deadline to file, Plaintiffs will prepare and email to Defense Counsel all documents necessary for obtaining Preliminary Approval, including: (i) a memorandum in support, of the Motion for Preliminary Approval that includes an analysis of the Settlement and a request for approval of the PAGA Settlement under Labor Code Section 2699, subd. (f)(2)); (ii) a draft proposed Order Granting Preliminary Approval and Approval of PAGA Settlement; (iii) a signed declaration from the Administrator attaching its estimated bid for administering the Settlement and attesting to its willingness to serve; competency; operative procedures for protecting the security of Class Data; amounts of insurance coverage for any data breach, defalcation of funds or other misfeasance; all facts relevant to any actual conflicts of interest with Class Members; and the nature and extent of any financial relationship with Plaintiffs, Class Counsel or Defense Counsel. Concurrently with the preliminary approval filing, Class Counsel will timely transmit to the LWDA all necessary documents.

7.2  Responsibilities of Counsel. Class Counsel and Defense Counsel are jointly responsible for expeditiously finalizing and filing the Motion for Preliminary Approval after the full execution of this Agreement; obtaining a soonest available hearing date for the Motion for Preliminary Approval; and for appearing in Court to advocate in favor of the Motion for Preliminary Approval. Class Counsel is responsible for delivering the Court's Preliminary Approval Order to the Administrator.

7.3  Duty to Cooperate. If the Parties disagree on any aspect of the proposed Motion for Preliminary Approval and/or the supporting declarations and documents, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to resolve the disagreement. If the Court does not grant Preliminary Approval or conditions Preliminary Approval on any material change to this Agreement, Class Counsel and Defense Counsel will expeditiously work together on behalf of the Parties by meeting in person or by telephone, and in good faith, to modify the Agreement and otherwise satisfy the Court's concerns.

## 8. SETTLEMENT ADMINISTRATION.

8.1  Selection of Administrator. The Parties have jointly selected the Administrator and verified that, as a condition of appointment, it agrees to be bound by this Agreement and to perform, as a fiduciary, all duties specified in this Agreement in exchange for payment of Administration Expenses as approved by the Court. The Parties and their Counsel represent

that they have no interest or relationship, financial or otherwise, with the Administrator other than a professional relationship arising out of prior experiences administering settlements.

8.2 <u>Employer Identification Number</u>. The Administrator will have and use its own Employer Identification Number for purposes of calculating payroll tax withholdings and providing reports to state and federal tax authorities, based on information that will be confidentially furnished by Defendant.

8.3 <u>Qualified Settlement Fund</u>. The Administrator will establish a settlement fund that meets the requirements of a Qualified Settlement Fund ("QSF") under US Treasury Regulation Section 468B-1. To the extent required by law, the Administrator will report payments made under Settlement Agreement from the QSF to the appropriate tax authorities. The Settlement Administrator will also issue a Court-approved payment to itself for services performed in connection with the Settlement.

8.4 Notice to Class Members.

8.4.1 No later than five (5) business days after receipt of the Class Data, the Administrator will notify Class Counsel that the list has been received and state the number of Class Members, FLSA Members, Aggrieved Employees, Class Period Workweeks, FLSA Workweeks, PAGA Period Workweeks, and the overall number of unique workweeks.

8.4.2 Using best efforts to perform as soon as possible, and in no event later than 14 days after receiving the Class Data, the Administrator will send to all Class Members identified in the Class Data, via first-class USPS mail, the Class Notice substantially in the form attached to this Agreement as Exhibit A. The first page of the Class Notice will prominently estimate the dollar amounts of any Individual Class Payment, FLSA Payment, and/or Individual PAGA Payment payable to the Class Member, and the number of Class Period Workweeks, FLSA Period Workweeks, and PAGA Period Workweeks (if applicable) used to calculate these amounts. Before mailing Class Notices, the Administrator will update Class Member addresses using the National Change of Address database.

8.4.3 Not later than 3 business days after the Administrator's receipt of any Class Notice returned by the USPS as undelivered, the Administrator will re-mail the Class Notice using any forwarding address provided by the USPS. If the USPS does not provide a forwarding address, the Administrator will conduct a Class Member Address Search, and re-mail the Class Notice to the most current address obtained. The Administrator has no obligation to make further attempts to locate or send Class Notice to Class Members whose Class Notice is returned by the USPS a second time.

8.4.4 The deadlines for Class Members' written objections, challenges to workweeks, and Requests for Exclusion will be extended an additional 14 days beyond the 45 days otherwise provided in the Class Notice for all Class Members whose notice is re-mailed. The Administrator will inform the Class Member of the extended deadline with the re-mailed Class Notice.

8.4.5    If the Administrator, Defendant, or Class Counsel is contacted by or otherwise discovers any persons who believe they should have been included in the Class Data and should have received Class Notice, the Parties will expeditiously meet and confer in person or by telephone, and in good faith in an effort to agree on whether to include them as Class Members. If the Parties agree, such persons will be Class Members entitled to the same rights as other Class Members, and the Administrator will send, via email or overnight delivery, a Class Notice requiring them to exercise options under this Agreement not later than 14 days after receipt of Class Notice, or the deadline dates in the Class Notice, whichever are later.

8.5    Requests for Exclusion (Opt-Outs).

8.5.1    Class Members who wish to exclude themselves (opt-out of) the Class Settlement must send the Administrator, by fax, email, or mail, a signed written Request for Exclusion not later than 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed). A Request for Exclusion is a letter from a Class Member or their representative that reasonably communicates the Class Member's election to be excluded from the Settlement and includes the Class Member's name, address, and email address or telephone number. To be valid, a Request for Exclusion must be timely faxed, emailed, or postmarked by the Response Deadline.

8.5.2    The Administrator may not reject a Request for Exclusion as invalid because it fails to contain all the information specified in the Class Notice. The Administrator will accept any Request for Exclusion as valid if the Administrator can reasonably ascertain the identity of the person as a Class Member and the Class Member's desire to be excluded. The Administrator's determination will be final and not appealable or otherwise susceptible to challenge. If the Administrator has reason to question the authenticity of a Request for Exclusion, the Administrator may demand additional proof of the Class Member's identity. The Administrator's determination of authenticity will be final and not appealable or otherwise susceptible to challenge.

8.5.3    Every Class Member who does not submit a timely and valid Request for Exclusion is deemed to be a Participating Class Member under this Agreement, entitled to all benefits and bound by all terms and conditions of the Settlement, including the Participating Class Members' Releases under Paragraphs 5.2 and 5.4 of this Agreement, regardless of whether the Participating Class Member actually receives the Class Notice or objects to the Settlement.

8.5.4    Every Class Member who submits a valid and timely Request for Exclusion is a Non-Participating Class Member and will not receive an Individual Class Payment or FLSA Payment, or have the right to object to the class action components of the Settlement. Because future PAGA claims are subject to claim preclusion upon entry of the Judgment, Non-Participating Class Members who are Aggrieved Employees are deemed to release the claims identified in Paragraph 5.4 of this Agreement and are eligible for an Individual PAGA Payment.

8.6     <u>Challenges to Calculation of Workweeks</u>. Each Class Member will have 45 days after the Administrator mails the Class Notice (plus an additional 14 days for Class Members whose Class Notice is re-mailed) to challenge the number of Class Period Workweeks, FLSA Workweeks, and PAGA Period Workweeks (if any) allocated to the Class Member in the Class Notice. The Class Member may challenge the allocation by communicating with the Administrator via mail, e-mail, or fax. The Administrator must encourage the challenging Class Member to submit supporting documentation or information, and will otherwise ask the individual what they contend is the correct number of workweeks to be attributed to them. In the absence of any contrary evidence rebutting the accuracy of Defendant's records and data, the Administrator is entitled to presume that the workweeks contained in the Class Notice are correct so long as they are consistent with the Class Data. However, if a Class Member produces information and/or documents to the contrary, the Administrator will evaluate the materials submitted by the Class Member and the Administrator will resolve and determine the number of eligible workweeks that the disputing Class Member should be credited with under the Settlement. The Administrator's determination of each Class Member's allocation of Class Period Workweeks, FLSA Workweeks, and/or PAGA Period Workweeks will be final and not appealable or otherwise susceptible to challenge. The Administrator will promptly provide copies of all challenges to calculation of workweeks to Defense Counsel and Class Counsel and the Administrator's determination of the challenges.

8.7     Objections to Settlement.

    8.7.1     Only Participating Class Members may object to the class action components of the Settlement and/or this Agreement, including contesting the fairness of the Settlement, and/or amounts requested for the Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and/or Class Representatives' Service Payments.

    8.7.2     Participating Class Members may file a written objection with the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, *Phillip Burton Federal Building* & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102. In the alternative, Participating Class Members may appear in Court (or hire an attorney to appear in Court) to present verbal objections at the Final Approval Hearing, whether or not they timely filed a written objection. A Participating Class Member who elects to file a written objection with the Court must do so not later than 45 days after the Administrator's mailing of the Class Notice (plus an additional 14 days for Class Members whose Class Notice was re-mailed).

    8.7.3     Non-Participating Class Members have no right to object to any of the class action components of the Settlement.

8.8     <u>Administrator Duties</u>. The Administrator has a duty to perform or observe all tasks to be performed or observed by the Administrator contained in this Agreement or otherwise.

8.8.1   <u>Email Address, Static Website and Toll-Free Number.</u> The Administrator will maintain and monitor an email address, a case website and a toll-free telephone number to receive Class Member calls, faxes and emails.

8.8.2   <u>Requests for Exclusion (Opt-outs) and Exclusion List</u>. The Administrator will promptly review on a rolling basis Requests for Exclusion to ascertain their validity, and promptly provide copies of all Requests for Exclusion from Settlement submitted (whether valid or invalid), with contact information redacted, to Defendant and Class Counsel. Not later than 5 business days after the expiration of the deadline for submitting Requests for Exclusion, the Administrator will email a list to Class Counsel and Defense Counsel containing (a) the names and other identifying information (not contact information) of Class Members who have timely submitted valid Requests for Exclusion ("Exclusion List"); and (b) the names and other identifying information (not contact information) of Class Members who have submitted invalid Requests for Exclusion.

8.8.3   <u>Weekly Reports</u>. The Administrator must, on a weekly basis, provide written reports to Class Counsel and Defense Counsel that, among other things, tally the number of: Class Notices mailed or re-mailed, Class Notices returned undelivered, Requests for Exclusion (whether valid or invalid) received, challenges to workweeks received and/or resolved, and checks mailed for Individual Class Payments and Individual PAGA Payments ("Weekly Report"). The Weekly Reports must include the Administrator's assessment of the validity of Requests for Exclusion and attach copies of all Requests for Exclusion and objections received, with contact information redacted.

8.8.4   <u>Workweek Challenges</u>. The Administrator has the authority to address and make final decisions consistent with the terms of this Agreement on all Class Member challenges over the calculation of workweeks. The Administrator's decision will be final and not appealable or otherwise susceptible to challenge.

8.8.5   <u>Administrator's Declaration</u>. Not later than 14 days before the date by which Plaintiffs are to file the Motion for Final Approval of the Settlement, the Administrator will provide to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its due diligence and compliance with all of its obligations under this Agreement, including, but not limited to, its mailing of Class Notice, the Class Notices returned as undelivered, the re-mailing of Class Notices, attempts to locate Class Members, the total number of Requests for Exclusion from Settlement it received (both valid or invalid) and attach the Exclusion List. The Administrator will supplement its declaration as needed or requested by the Parties and/or the Court. Class Counsel is responsible for filing the Administrator's declaration(s) in Court.

8.8.6   <u>Final Report by Settlement Administrator</u>. Within 10 days after the Administrator disburses all funds in the Gross Settlement Amount, the Administrator will provide Class Counsel and Defense Counsel with a final report detailing its disbursements by employee identification number only of all payments made under this Agreement. At least 15 days before any deadline set by the Court, the Administrator will prepare, and

submit to Class Counsel and Defense Counsel, a signed declaration suitable for filing in Court attesting to its disbursement of all payments required under this Agreement. Class Counsel is responsible for filing the Administrator's declaration in Court.

## 9.   CLASS SIZE ESTIMATES AND ESCALATOR CLAUSE.

As of August 3, 2023, Defendant calculated that from August 29, 2018 to that date, there were approximately 4,573 individuals that would be Class Members and they worked approximately 281,550 workweeks. If the size of the unique workweeks during the Class Period exceeds 281,550 workweeks by more than 8% (i.e. in excess of 304,074 unique workweeks), Defendant will have the option to increase the Gross Settlement Amount by a proportionate percentage for each additional unique workweek that exceeds the 304,074 unique workweeks (i.e., if the workweeks increased by 10%, the Gross Settlement Amount would increase by 2%), or in the alternative, Defendant may elect to stop the Class Period at the point at which the unique workweeks is no more than 304,074 unique workweeks.

## 10.   DEFENDANT'S RIGHT TO WITHDRAW.

If the number of valid Requests for Exclusion identified in the Exclusion List (i) exceeds 5% of the total of all Class Members or (ii) the total persons represent more than 5% of the workweeks, then Defendant may, but is not obligated, elect to withdraw from the Settlement. The Parties agree that, if Defendant withdraws, the Settlement will be void ab initio, have no force or effect whatsoever, and that neither Party will have any further obligation to perform under this Agreement; provided, however, Defendant will remain responsible for paying all Settlement Administration Expenses incurred to that point. Defendant must notify Class Counsel and the Court of its election to withdraw not later than 10 days after the Administrator sends the final Exclusion List with Workweeks to Defense Counsel; late elections will have no effect.

## 11.   MOTION FOR FINAL APPROVAL.

Not later than 35 days before the calendared Final Approval Hearing, Plaintiffs will file in Court, a motion for final approval of the Settlement that includes a request for approval of the PAGA settlement under Labor Code Section 2699, subd. (l), a Proposed Final Approval Order and a proposed Judgment (collectively "Motion for Final Approval"). Plaintiffs will provide drafts of these documents to Defense Counsel not later than seven days prior to filing the Motion for Final Approval. Class Counsel and Defense Counsel will expeditiously meet and confer in person or by telephone, and in good faith, to resolve any disagreements concerning the Motion for Final Approval.

11.1   Response to Objections. Each Party retains the right to respond to any objection raised by a Participating Class Member, including the right to file responsive documents in Court no later than five court days prior to the Final Approval Hearing, or as otherwise ordered or accepted by the Court.

11.2   Duty to Cooperate. If the Court does not grant Final Approval or conditions Final Approval on any material change to the Settlement (including, but not limited to, the scope of release to be granted by Participating Class Members, Participating FLSA Members, or Aggrieved Employees), the Parties will expeditiously work together in good faith to address the Court's

concerns by revising the Agreement as necessary to obtain Final Approval. The Court's decision to award less than the amounts requested for the Class Representatives Service Payments, Class Counsel Fees Payment, Class Counsel Litigation Expenses Payment, and/or Administrator Expenses Payment will not constitute a material modification to the Agreement within the meaning of this paragraph.

11.3    Continuing Jurisdiction of the Court. The Parties agree that, after entry of Judgment, the Court will retain jurisdiction over the Parties, Action, and the Settlement solely for purposes of (i) enforcing this Agreement and/or Judgment, (ii) addressing settlement administration matters, and (iii) addressing such post-Judgment matters as are permitted by law.

11.4    Waiver of Right to Appeal. Provided the Judgment is consistent with the terms and conditions of this Agreement the Parties, their respective counsel, and all Participating Class Members who did not object to the Settlement as provided in this Agreement, waive all rights to appeal from the Judgment, including all rights to post-judgment and appellate proceedings, the right to file motions to vacate judgment, motions for new trial, extraordinary writs, and appeals. The waiver of appeal does not include any waiver of the right to oppose such motions, writs or appeals. If an objector appeals the Judgment, the Parties' obligations to perform under this Agreement will be suspended until such time as the appeal is finally resolved and the Judgment becomes final, except as to matters that do not affect the amount of the Net Settlement Amount. Nothing in this Agreement shall limit Plaintiffs' or Class Counsel's ability to appeal any decision by the Court to award less than the requested Attorney Fee Award, Cost Award, Administration Costs, and Class Representatives' Service Payments.

11.5    Appellate Court Orders to Vacate, Reverse, or Materially Modify Judgment. If the reviewing Court vacates, reverses, or modifies the Judgment in a manner that requires a material modification of this Agreement (including, but not limited to, the scope of the release to be granted by Participating Class Members, Participating FLSA Members, or Aggrieved Employees), this Agreement will be null and void. The Parties will nevertheless expeditiously work together in good faith to address the appellate court's concerns and to obtain Final Approval and entry of Judgment, sharing, on a 50-50 basis, any additional Administration Expenses reasonably incurred after remittitur. An appellate decision to vacate, reverse, or modify the Court's award of the Class Representatives' Service Payments or any payments to Class Counsel will not constitute a material modification of the Judgment within the meaning of this paragraph, as long as the Gross Settlement Amount remains unchanged.

## 12.    AMENDED JUDGMENT.

If any amended judgment is required, the Parties will work together in good faith to jointly submit a proposed amended judgment.

## 13.    ADDITIONAL PROVISIONS.

13.1    No Admission of Liability, Class Certification or Representative Manageability for Other Purposes. This Agreement represents a compromise and settlement of highly disputed

claims. Nothing in this Agreement is intended or should be construed as an admission by Defendant that any of the allegations in the Operative Complaint have merit or that Defendant have any liability for any claims asserted; nor should it be intended or construed as an admission by Plaintiffs that Defendant's defenses in the Action have merit. The Parties agree that class certification and representative treatment is for purposes of this Settlement only. If, for any reason the Court does grant Preliminary Approval, Final Approval or enter Judgment, Defendant reserves the right to contest certification of any class for any reasons, and Defendant reserves all available defenses to the claims in the Action, and Plaintiffs reserve the right to move for class certification on any grounds available and to contest Defendant's defenses. The Settlement, this Agreement and Parties' willingness to settle the Action will have no bearing on, and will not be admissible in connection with, any litigation (except for proceedings to enforce or effectuate the Settlement and this Agreement).

13.2 <u>Confidentiality Prior to Preliminary Approval</u>. Plaintiffs, Class Counsel, Defendant, and Defense Counsel separately agree that, until the Motion for Preliminary Approval of Settlement is filed, they and each of them will not disclose, disseminate and/or publicize, or cause or permit another person to disclose, disseminate or publicize, any of the terms of the Agreement directly or indirectly, specifically or generally, to any person, corporation, association, government agency, or other entity except: (1) to the Parties' attorneys, accountants, or spouses, all of whom will be instructed to keep this Agreement confidential; (2) counsel in a related matter, if applicable; (3) to the extent necessary to report income to appropriate taxing authorities; (4) in response to a court order or subpoena; or (5) in response to an inquiry or subpoena issued by a state or federal government agency. Each Party agrees to immediately notify each other Party of any judicial or agency order, inquiry, or subpoena seeking such information. Plaintiffs, Class Counsel, Defendant, and Defense Counsel separately agree not to, directly or indirectly, initiate any conversation or other communication, before the filing of the Motion for Preliminary Approval, with any third party regarding this Agreement or the matters giving rise to this Agreement except to respond only that "the matter was resolved," or words to that effect. This paragraph does not restrict the Parties' ability to prepare and file the Motion for Preliminary Approval and all supporting documents.

13.3 <u>No Solicitation</u>. The Parties separately agree that they and their respective counsel and employees will not solicit any Class Member to opt out of or object to the Settlement, or appeal from the Judgment. Nothing in this paragraph will be construed to restrict Class Counsel's ability to communicate with Class Members in accordance with Class Counsel's ethical obligations owed to Class Members.

13.4 <u>No Publicity</u>. Plaintiffs and Class Counsel will not contact the media about the settlement or respond to any inquiries by the media regarding the Settlement, other than to state that the matter was amicably settled. Plaintiffs and their respective counsel also will not post any information about the settlement on social media or the firms' websites. However, following approval, and for the limited purpose of allowing Class Counsel to prove adequacy as class counsel in other actions, Class Counsel may disclose basic information about the settlement.

13.5 <u>Integrated Agreement</u>. Upon execution by all Parties and their counsel, this Agreement together with its attached exhibits will constitute the entire agreement between the Parties

relating to the Settlement, superseding any and all oral representations, warranties, covenants, or inducements made to or by any Party.

13.6   Attorney Authorization. Class Counsel and Defense Counsel separately warrant and represent that they are authorized by Plaintiffs and Defendant, respectively, to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents reasonably required to effectuate the terms of this Agreement including any amendments to this Agreement.

13.7   Cooperation. The Parties and their counsel will cooperate with each other and use their best efforts, in good faith, to implement the Settlement by, among other things, modifying the Agreement, submitting supplemental evidence and supplementing points and authorities as requested by the Court. In the event the Parties are unable to agree upon the form or content of any document necessary to implement the Settlement, or on any modification of the Agreement that may become necessary to implement the Settlement, the Parties will seek the assistance of a mediator and/or the Court for resolution.

13.8   No Prior Assignments. The Parties separately represent and warrant that they have not directly or indirectly assigned, transferred, encumbered, or purported to assign, transfer, or encumber to any person or entity and portion of any liability, claim, demand, action, cause of action, or right released and discharged by the Party in this Settlement.

13.9   No Tax Advice. Neither Plaintiffs, Class Counsel, Defendant, nor Defense Counsel are providing any advice regarding taxes or taxability, nor will anything in this Settlement be relied upon as such within the meaning of United States Treasury Department Circular 230 (31 CFR Part 10, as amended) or otherwise.

13.10  Modification of Agreement. This Agreement, and all parts of it, may be amended, modified, changed, or waived only by an express written instrument signed by all Parties or their representatives, and approved by the Court.

13.11  Agreement Binding on Successors. This Agreement will be binding upon, and inure to the benefit of, the successors of each of the Parties.

13.12  Applicable Law. All terms and conditions of this Agreement and its exhibits will be governed by and interpreted according to the internal laws of the state of California, without regard to conflict of law principles.

13.13  Cooperation in Drafting. The Parties have cooperated in the drafting and preparation of this Agreement. This Agreement will not be construed against any Party on the basis that the Party was the drafter or participated in the drafting.

13.14  Confidentiality. To the extent permitted by law, all agreements made, and orders entered during the Action and in this Agreement relating to the confidentiality of information will survive the execution of this Agreement.

13.15  Use and Return of Class Data. Information provided to Class Counsel pursuant to Evidence Code Section 1152, and all copies and summaries of the Class Data provided to Class

Counsel by Defendant in connection with the mediation, other settlement negotiations, or in connection with the Settlement, may be used only with respect to this Settlement, and no other purpose, and may not be used in any way that violates any existing contractual agreement, statute, or rule of court. After the final pay out of all Settlement funds, and no later than 4 years after the final pay out of all Settlement funds, Plaintiffs will destroy all paper and electronic versions of Class Data received from Defendant.

13.16 Headings. The descriptive heading of any section or paragraph of this Agreement is inserted for convenience of reference only and does not constitute a part of this Agreement.

13.17 Calendar Days. Unless otherwise noted, all reference to "days" in this Agreement will be to calendar days. In the event any date or deadline set forth in this Agreement falls on a weekend or federal legal holiday, such date or deadline will be on the first business day thereafter.

13.18 Notice. All notices, demands or other communications between the Parties in connection with this Agreement will be in writing and deemed to have been duly given as of the third business day after mailing by United States mail, or the day sent by email or messenger, addressed as follows:

| To Plaintiffs: | To Defendant: |
|---|---|
| David Markham<br>Maggie Realin<br>Lisa Brevard<br>**THE MARKHAM LAW FIRM**<br>888 Prospect Street, Suite 200<br>La Jolla, CA 92037<br>Telephone: (619) 399-3995<br>Facsimile: (619) 615-2067 | Spencer C. Skeen<br>Cameron O. Flynn<br>**OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.**<br>4660 La Jolla Village Dr., Suite 900<br>San Diego, CA 92122<br>T: (858) 652-3100 / F: (858) 652-3101 |

13.19 Execution in Counterparts. This Agreement may be executed in one or more counterparts by facsimile, electronically (i.e. DocuSign), or email which for purposes of this Agreement will be accepted as an original. All executed counterparts and each of them will be deemed to be one and the same instrument if counsel for the Parties will exchange between themselves signed counterparts. Any executed counterpart will be admissible in evidence to prove the existence and contents of this Agreement.

13.20 Stay of Litigation. The Parties agree that upon the execution of this Agreement the litigation for all Actions will be stayed, except to effectuate the terms of this Agreement. The Parties further agree that upon the signing of this Agreement that pursuant to Code of Civil Procedure Section 583.330 to extend the date to bring a case to trial under Code of Civil Procedure Section 583.310 for the entire period of this settlement process, beginning on the date of execution of this Agreement, plus any additional time that the Parties previously agreed to stay the action during settlement negotiations.

[Signatures of Plaintiffs and Defendant on next page]

| PLAINTIFF DEREK STEWART | |
|---|---|
| Date: Nov 29, 2023 | *Derek stewart* |
| | Derek Stewart |

| PLAINTIFF JAVONTE WILLIAMS | |
|---|---|
| Date: Nov 29, 2023 | *Javonte williams* |
| | Javonte Williams |

| DEFENDANT Del Monte Foods, Inc. | |
|---|---|
| Date:  12/1/2023 | *William R. Sawyers* |
| | By:   William R. Sawyers |
| | Title:  General Counsel |

APPROVED AS TO FORM ONLY:

| COUNSEL FOR PLAINTIFFS AND DEFENDANT | |
|---|---|
| Date:  November 29, 2023 | *signature* |
| | David Markham |
| | Maggie Realin |
| | Lisa Brevard |
| | **THE MARKHAM LAW FIRM** |
| | |
| | Walter L. Haines |
| | **UNITED EMPLOYEES LAW GROUP** |
| Date:  December 4, 2023 | *signature* |
| | Spencer C. Skeen, Esq. |
| | Cameron O. Flynn, Esq. |

|  | **OGLETREE, DEAKINS, NASH, SMOAK, & STEWART, P.C.** |
| --- | --- |

## COURT APPROVED NOTICE OF CLASS ACTION SETTLEMENT
## AND HEARING DATE FOR FINAL COURT APPROVAL

*The United States District Court for the Northern District of California authorized this Notice. Read it carefully! It is not junk mail, spam, an advertisement, or solicitation by a lawyer. This Notice does not concern a lawsuit against you.*

**You may be eligible to receive money** from an employee class action lawsuit ("Action") against Del Monte Foods, Inc. ("Defendant") for alleged wage and hour violations. The Action was filed by current and former employees Derek Stewart and Javonte Williams ("Plaintiffs") and seeks recovery based on Plaintiffs' alleged claims for violations related to: (1) overtime under federal law (FLSA); (2) failure to provide one day's rest in seven; (3) minimum wage; (4) overtime and double time under California law; (5) meal periods; (6) rest periods; (7) inaccurate wage statements; (8) expense reimbursements; (9) waiting time penalties, (10) unfair competition; and (11) PAGA penalties for these alleged violations. It seeks recovery for all current or former non-exempt production persons employed by Defendant in California during the Class Period who do not opt out of the Settlement. The Class Period is from August 29, 2018 through DATE. Plaintiffs also seek recovery for all current or former non-exempt production persons employed by in California who opt in to the Settlement of federal claims under the Fair Labor Standards Act ("FLSA"). The FLSA Period is from August 29, 2019 through DATE. Finally, Plaintiffs seek penalties under the California Private Attorney General Act ("PAGA") for all current or former non-exempt production persons employed by Defendant from June 22, 2021 to DATE.

The proposed Settlement has three main parts: (1) a Class Settlement requiring Defendant to fund Individual Class Payments; (2) an FLSA Settlement requiring Defendant to fund FLSA Payments; and (3) a PAGA Settlement requiring Defendant to fund Individual PAGA Payments and pay penalties to the California Labor and Workforce Development Agency ("LWDA").

Based on Defendant's records, and the Parties' current assumptions:

- **Your Individual Class Payment is estimated to be $ADD (less withholding);**
- **Your FLSA Payment is estimated to be $ADD (less withholding); and**
- **Your Individual PAGA Payment is estimated to be $ ADD.**

The actual amount you may receive likely will be different and will depend on a number of factors. (If no amount is stated for your FLSA Payment and/or Individual PAGA Payment, then according to Defendant's records you are not eligible for an FLSA Payment or Individual PAGA Payment under the Settlement because you did not work during the FLSA Period or PAGA Period.)

The above estimates are based on Defendant's records showing that **you worked:**

- **ADD** workweeks during the Class Period;
- **ADD** workweeks during the FLSA
- **ADD** workweeks during the PAGA Period.

If you believe that you worked more workweeks during either period, you can submit a challenge by the deadline date. See Section 4 of this Notice.

The Court has already preliminarily approved the proposed Settlement and approved this Notice. The Court has not yet decided whether to grant final approval. Your legal rights are affected whether you act or not act. Read this Notice carefully. You will be deemed to have carefully read and understood it. At the Final Approval Hearing, the Court will decide whether to finally approve the Settlement and how much of the Settlement will be paid to Plaintiffs and Plaintiffs' attorneys ("Class Counsel"). The Court will also decide whether to enter a judgment that requires Defendant to make payments under the Settlement and requires Class Members, FLSA Members, and Aggrieved Employees to give up their rights to assert certain claims against Defendant and Released Parties.

If you worked for Defendant during the Class Period, FLSA Period, and/or the PAGA Period, you have two basic options under the Settlement:

     **1.**     **Do Nothing**. You do not have to do anything to participate in the proposed Settlement and be eligible for an Individual Class Payment, FLSA Payment, and/or an Individual PAGA Payment. As a Participating Class Member, though, you will give up your right to assert Class Period claims against Defendant and Released Parties.

     **2.**     **Opt-Out of the Class Settlement**. You can exclude yourself from the Class Settlement (opt-out) by submitting the written Request for Exclusion or otherwise notifying the Administrator in writing. If you opt-out of the Settlement, you will not receive an Individual Class Payment or FLSA Payment. You will, however, preserve your right to personally pursue Class Period / FLSA claims against Defendant and Released Parties, and, if you are an Aggrieved Employee, remain eligible for an Individual PAGA Payment. You cannot opt-out of the PAGA portion of the proposed Settlement.

**Defendant will not retaliate against you for any actions you take with respect to the proposed Settlement.**

## **SUMMARY OF YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT**

| | |
|---|---|
| **You Do Not Have to Do Anything to Participate in the Settlement** | If you do nothing, you will be a Participating Class Member, eligible for an Individual Class Payment, FLSA Payment, and an Individual PAGA Payment (if any). In exchange, you will give up your right to assert the claims against Defendant and Released Parties that are covered by this Settlement (Released Claims). |
| **To Participate in the FLSA Settlement, You Must Cash Your Check** | No matter whether you cash your check or not, if you are a Participating Class Member and/or PAGA Member you will give up your right to assert the Released Claims. But to participate in the FLSA settlement, you must deposit or cash your check. |
| **You Can Opt-out of the Class Settlement but not the PAGA Settlement**<br><br>**The Opt-out Deadline is <mark>DATE</mark>** | If you do not want to fully participate in the proposed Settlement, you can opt-out of the Class Settlement by sending the Administrator a written Request for Exclusion. Once excluded, you will be a Non-Participating Class Member and no longer eligible for an Individual Class Payment or FLSA Payment (if applicable). Non-Participating Class Members cannot object to any portion of the proposed Settlement. See Section **6** of this Notice.<br><br>You cannot opt-out of the PAGA portion of the proposed Settlement. Defendant must pay Individual PAGA Payments to all Aggrieved Employees. |
| **Participating Class Members Can Object to the Class Settlement but not the PAGA Settlement**<br><br>**Written Objections Must be Filed by <mark>DATE</mark>** | All Class Members who do not opt-out ("Participating Class Members") can object to any aspect of the proposed Settlement. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. See Section **7** of this Notice. |
| **You Can Participate in the Final Approval Hearing** | The Court's Final Approval Hearing is scheduled to take place on <mark>DATE</mark>. You do not have to attend but you do have the right to appear (or hire an attorney to appear on your behalf at your own cost), in person, by telephone or by using the Court's virtual appearance platform. Participating Class Members can verbally object to the Settlement at the Final Approval Hearing. See Section **8** of this Notice. |
| **You Can Challenge the Calculation of Your Workweeks**<br><br>**Written Challenges Must be Submitted by <mark>DATE</mark>** | The amount of your Individual Class Payment, FLSA Payment, and PAGA Payment (if any) depends on how many workweeks you worked at least one day during the respective periods. The number of Class Period Workweeks, FLSA Workweeks, and PAGA Period Workweeks you worked according to Defendant's records is stated on the first page of this Notice. If you disagree with any of these numbers, you may challenge it by <mark>DATE</mark>. See Section **4** of this Notice. |

## 1.   WHAT IS THE ACTION ABOUT?

Plaintiffs are current or former production employees of Defendant. The Action alleges claims for claims for: (1) overtime under federal law (FLSA); (2) failure to provide one day's rest in seven; (3) minimum wage; (4) overtime and double time under California law; (5) meal periods; (6) rest periods; (7) inaccurate wage statements; (8) expense reimbursements; (9) waiting time penalties, (10) unfair competition; and (11) PAGA penalties for these alleged violations. Plaintiffs are represented by the following attorneys in the Action: David Markham, Maggie Realin, and Lisa Brevard of The Markham Law Firm and Walter L. Haines of United Employees Law Group ("Class Counsel").

Defendant strongly denies violating any laws or failing to pay any wages and contend they complied with all applicable laws.

## 2.   WHAT DOES IT MEAN THAT THE ACTION HAS SETTLED?

So far, the Court has made no determination whether Plaintiffs or Defendant is correct on the merits. In the meantime, Plaintiffs and Defendant resolved the Action by negotiating an end to the case by agreement (settle the case) rather than continuing the expensive and time-consuming process of litigation. The negotiations were successful. By signing a written settlement agreement ("Agreement") and agreeing to jointly ask the Court to enter a judgment ending the Action and enforcing the Agreement, Plaintiffs and Defendant have negotiated a proposed Settlement that is subject to the Court's Final Approval. Both sides agree the proposed Settlement is a compromise of disputed claims. By agreeing to settle, Defendant does not admit any violations or concede the merit of any claims.

Plaintiffs and Class Counsel believe the Settlement is fair and adequate because: (1) Defendant has agreed to pay a fair, reasonable and adequate amount considering the claims and the risks and uncertainties of continued litigation; and (2) Settlement is in the best interests of the Class Members, FLSA Members, and Aggrieved Employees. The Court preliminarily approved the proposed Settlement as fair, reasonable and adequate, authorized this Notice, and scheduled a hearing to determine Final Approval.

## 3.   WHAT ARE THE IMPORTANT TERMS OF THE PROPOSED SETTLEMENT?

A.      Defendant Will Pay $2,000,000.00 as the Gross Settlement Amount (Gross Settlement). Defendant has agreed to deposit the Gross Settlement into an account controlled by the Administrator of the Settlement. The Administrator will use the Gross Settlement to pay the Individual Class Payments, FLSA Payment, Individual PAGA Payments, Class Representatives' Service Payments, Class Counsel's attorneys' fees and expenses, the Administrator's expenses, and penalties to be paid to the LWDA. Assuming the Court grants Final Approval, Defendant will fund the Gross Settlement not more than 14 days after the Judgment entered by the Court becomes final.

B.      Court Approved Deductions from Gross Settlement. At the Final Approval Hearing, Plaintiffs and/or Class Counsel will ask the Court to approve the following deductions from the Gross Settlement, the amounts of which will be decided by the Court at the Final Approval Hearing:

A) Up to 33.33% (or $666,666.67) of the Gross Settlement to Class Counsel for attorneys' fees and up to $20,000 for their out-of-pocket litigation expenses. To date, Class Counsel has worked and incurred expenses on the Action without payment.

B) Up to $15,000 each for Plaintiffs as a Class Representative Award for filing and prosecuting the Action, working with Class Counsel and representing the Class. A Class Representative Award will be the only monies Plaintiffs will receive other than each Plaintiff's Individual Class Payment and any Individual PAGA Payment.

C) An estimated amount of $31,270 to the Administrator for services administering the Settlement.

D) $50,000 for the FLSA Allocation.

E) $60,000 for PAGA Penalties, allocated 75% ($45,000) to the LWDA PAGA Payment and 25% ($15,000) in Individual PAGA Payments to the Aggrieved Employees based on their PAGA Period Workweeks.

C.    <u>Net Settlement Distributed to Class Members</u>. After making the above deductions in amounts approved by the Court, the Administrator will distribute the rest of the Gross Settlement (the "Net Settlement") by making Individual Class Payments to Participating Class Members based on their Class Period Workweeks.

D.    <u>Taxes Owed on Payments to Class Members.</u> Plaintiffs and Defendant are asking the Court to approve an allocation of 25% of each Individual Class Payment to taxable wages ("Wage Portion") and 75% to interest and penalties ("Non-Wage Portion.). The Wage Portion is subject to withholdings and will be reported on IRS W-2 Forms. (Defendant will separately pay employer payroll taxes it owes on the Wage Portion.) The FLSA Payment will be all wages subject to withholdings and will be reported on IRS W-2 Forms. The Individual PAGA Payments are counted as penalties rather than wages for tax purposes. The Administrator will report the Individual PAGA Payments and the Non-Wage Portions of the Individual Class Payments on IRS 1099 Forms.

Although Plaintiffs and Defendant have agreed to these allocations, neither side is giving you any advice on whether your Payments are taxable or how much you might owe in taxes. You are responsible for paying all taxes (including penalties and interest on back taxes) on any Payments received from the proposed Settlement. You should consult a tax advisor if you have any questions about the tax consequences of the proposed Settlement.

E.    <u>Need to Promptly Cash or Deposit Payment Checks.</u> The front of every check issued for Individual Class Payments and Individual PAGA Payments will show the date when the check expires (the void date). If you do not cash or deposit it by the void date, your check will be automatically cancelled, and the monies may be transferred to the will be deposited with the California Controller's Unclaimed Property Fund in your name. You must cash or deposit your check to be a FLSA Participating Member, and any uncashed funds will be returned to Defendant as there will be no FLSA release as to you.

F.    <u>Requests for Exclusion from the Class Settlement (Opt-Outs).</u> You will be treated as a Participating Class Member, participating fully in the Class Settlement, unless you notify the

Administrator in writing, not later than DATE, that you wish to opt-out. The Request for Exclusion should be a letter from a Class Member setting forth a Class Member's name, present address, telephone number, and a simple statement electing to be excluded from the Settlement. Excluded Class Members (i.e., Non-Participating Class Members) will not receive Individual Class Payments or FLSA Payments, but will preserve their rights to personally pursue wage and hour claims against Defendant and Released Parties.

You cannot opt-out of the PAGA portion of the Settlement. Class Members who exclude themselves from the Class Settlement (Non-Participating Class Members) remain eligible for Individual PAGA Payments.

Please see Section 6 of this Notice for instructions how to opt-out of the settlement, if you wish to do so.

G.      The Proposed Settlement Will be Void if the Court Denies Final Approval. It is possible the Court will decline to grant Final Approval of the Settlement or decline to enter a Judgment. It is also possible the Court will enter a Judgment that is reversed on appeal. Plaintiffs and Defendant have agreed that, in either case, the Settlement will be void: Defendant will not pay any money and Class Members will not release any claims against Defendant.

H.      Administrator. The Court has appointed a neutral company, Simpluris (the "Administrator"), to send this Notice, calculate and make payments, and process Class Members' Requests for Exclusion. The Administrator will also decide Class Member challenges over workweeks, mail and re-mail settlement checks and tax forms, and perform other tasks necessary to administer the Settlement. The Administrator's contact information is contained in Section 9 of this Notice. The Settlement Administrator has established a settlement website where you can obtain case documents, including the settlement documents, and additional information [insert].

I.      Participating Class Members' Release. After the Judgment is final and Defendant has fully funded the Gross Settlement (and separately paid all employer payroll taxes), Participating Class Members will be legally barred from asserting any of the claims released under the Settlement. This means that unless you opted out by validly excluding yourself from the Class Settlement, you cannot sue, continue to sue, or be part of any other lawsuit against Defendant, based on the claims resolved by this Settlement.

The Participating Class Members will be bound by the following release:

> All Participating Class Members, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, release Released Parties from any claims, wages, premiums, fringes, liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged against Released Parties arising out of the facts, circumstances, and primary rights at issue in the Operative Complaint and any amendments, including all claims for: (1) failure to provide one day's rest in seven; (2) minimum wage; (3) overtime and double time under California law; (4) meal periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting time penalties, (9) unfair competition; and (10) PAGA penalties for these alleged violations. This Release of Class and PAGA claims includes known and unknown claims arising under California Labor Code sections 201-203, 204,

210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558, 1182.12, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage Order(s), and the California Unfair Competition Law, Business and Professions Code section 17200, *et seq.*, as well as all claims arising under the listed Labor Code statutes based on the primary rights of those statutes, irrespective of the theory of recovery alleged. The released claims include, but are not limited to, claims based on factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay. Except as set forth in Paragraph 5.3 and Paragraph 5.4 of the Agreement, Participating Class Members do not release any other claims, including claims for vested benefits, wrongful termination, violation of the FEHA, unemployment insurance, disability, social security, workers' compensation, or claims based on facts occur-ring outside the Class Period.

J.    <u>Participating FLSA Members Release</u>. All FLSA Members will receive a check, which will allow the FLSA Members to opt in to the settlement. The check will state:

> "My endorsing, cashing, or depositing of this check constitutes my consent to join the lawsuit entitled Stewart v. Del Monte Foods, Inc., Case No. 3:22-CV-04919-AMO (N.D. Cal.), pursuant to the provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. Section 216(b)."

All FLSA Members who endorse, cash, or deposit their check will become FLSA Participating Members and will release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from any claims, wages, premiums, fringes, liquidated damages, attorneys' fees, interest, or penalties alleged or that could have been alleged against Released Parties arising out of the facts, circumstances, and primary rights at issue in the Operative Complaint and any amendments, including all claims for overtime under federal law (FLSA) based on the primary rights of those statutes, irrespective of the theory of recovery alleged in the Operative Complaint. Those who "opted-in" to the settlement of FLSA claims and in addition to waiving the state law claims, the FLSA Member will have also waived any claims available under the FLSA. If a FLSA Member attempts to alter this language on the back of the check, any such alterations will be null and void and have no legal effect.

K.    <u>PAGA Released Claims</u>. After the Court's judgment is final, and Defendant has paid the Gross Settlement (and separately paid the employer-side payroll taxes), Plaintiffs, the LWDA, and the State of California, will be barred from asserting PAGA claims against Defendant. The PAGA Released Claims are as follows:

> All Aggrieved Employees are deemed to release, on behalf of themselves and their respective former and present representatives, agents, attorneys, heirs, administrators, successors, and assigns, the Released Parties from all claims for PAGA penalties that were alleged, or reasonably could have been alleged, based on the PAGA Period facts stated in the Operative Complaint, and the PAGA Notice and ascertained in the course of the Action, including all claims for: (1) failure to provide one day's rest in seven; (2) minimum wage;

(3) overtime and double time under California law; (4) meal periods; (5) rest periods; (6) inaccurate wage statements; (7) expense reimbursements; (8) waiting time penalties, (9) unfair competition; and (10) PAGA penalties for these alleged violations. This Release of Class and PAGA claims includes known and unknown claims arising under California Labor Code sections 201-203, 204, 210, 218.5, 218.6, 226, 226.3, 226.7, 510, 512, 551, 552, 558, 1182.12, 1174.5, 1194, 1194.2, 1197, 1197.1, 1198, 1199, 2699, 2802, the applicable IWC Wage Order(s), and the California Unfair Competition Law, Business and Professions Code section 17200, *et seq.*, as well as all claims arising under the listed Labor Code statutes based on the primary rights of those statutes, irrespective of the theory of recovery alleged. The released claims include, but are not limited to, claims based on the factual allegations regarding radio use during meal and rest periods, inability to take full and/or uninterrupted meal and rest periods due to work demands, rounding of time, off-the-clock work (including pre-shift and post-shift duties), auto deduction of meal periods, failure to adequately document time records (including meal periods), failure to pay the regular rate of pay, on-duty meal periods, failure to provide second meal periods, and reporting time pay.

**4.   HOW WILL THE ADMINISTRATOR CALCULATE MY PAYMENT?**

A.      <u>Individual Class Payments.</u> The Administrator will calculate Individual Class Payments by (a) dividing the Net Settlement Amount by the total number of Class Period Workweeks worked by all Participating Class Members, and (b) multiplying the result by the number of Class Period Workweeks worked by each individual Participating Class Member.

B.      <u>FLSA Payments.</u> The Administrator will calculate FLSA Payments by (a) dividing the FLSA Allocation by the total number of FLSA Workweeks worked by all FLSA Members who are also Participating Class Members, and (b) multiplying the result by the number of FLSA Workweeks worked by each FLSA Member who is also a Participating Class Member.

C.      <u>Individual PAGA Payments</u>. The Administrator will calculate Individual PAGA Payments by (a) dividing the Aggrieved Employees' 25% share of PAGA Penalties by the total number of PAGA Period Workweeks worked by all Aggrieved Employees and (b) multiplying the result by the number of PAGA Period Workweeks worked by each individual Aggrieved Employee.

D.      <u>Workweek Challenges</u>. The number of Class Period Workweeks, FLSA Workweeks, and/or PAGA Period Workweeks you worked, as recorded in Defendant's records, are stated in the first page of this Notice. You have until <mark>DATE</mark> to challenge the number of workweeks credited to you. You can submit your challenge by signing and sending a letter to the Administrator via mail, email or fax. Section 9 of this Notice has the Administrator's contact information.

You need to support your challenge by providing evidence, such as sending copies of pay stubs, bank records, or other records. The Administrator will accept Defendant's calculation of workweeks based on Defendant's records as accurate unless you provide evidence containing contrary information. You should send copies rather than originals because the documents will not be returned to you. The Administrator will resolve workweek challenges based on your submission and on input from Defense Counsel. The Administrator's decision is final.

## 5.  HOW WILL I GET PAID?

A.      Participating Class Members. The Administrator will send, by U.S. mail, a single check to every Participating Class Member (i.e., every Class Member who does not opt-out) including those who also qualify as Aggrieved Employees. The single check will combine the Individual Class Payment and the Individual PAGA Payment. The Administrator will send a second check to every FLSA Member who is also a Participating Class Member.

B.      Non-Participating Class Members. The Administrator will send, by U.S. mail, a single Individual PAGA Payment check to every Aggrieved Employee who opts out of the Class Settlement (i.e., every Non-Participating Class Member).

**Your check will be sent to the same address as this Notice. If you change your address, be sure to notify the Administrator as soon as possible. Section 9 of this Notice has the Administrator's contact information.**

## 6.  HOW DO I OPT-OUT OF THE CLASS SETTLEMENT?

Submit a written and signed letter with your name, present address, telephone number, and a simple statement that you do not want to participate in the Settlement. The Administrator will exclude you based on any writing communicating your request to be excluded. Be sure to personally sign your request, identify the Action as *Stewart et al. v Del Monte Foods, Inc.* and include your identifying information (full name, address, and telephone number or email address). You must make the request yourself. If someone else makes the request for you, it will not be valid. **The Administrator must be sent your request to be excluded by DATE, or it will be invalid.** Section 9 of the Notice has the Administrator's contact information.

## 7.  HOW DO I OBJECT TO THE SETTLEMENT?

You can ask the Court to deny approval by filing an objection. You can't ask the Court to order a different settlement; the Court can only approve or reject the settlement. If the Court denies approval, no settlement payments will be sent out, and the lawsuit will continue. If that is what you want to happen, you should object.

Any objection to the proposed settlement must be in writing. If you file a timely written objection, you may, but are not required to, appear at the Final Approval Hearing, either in person or through your own attorney. If you appear through your own attorney, you are responsible for hiring and paying that attorney. All written objections and supporting papers must (a) clearly identify the case name and number (Stewart et al. v. Del Monte, Inc., Case No. 3:22-CV-04919-AMO), (b) be submitted to the Court either by filing them electronically or in person at any location of the United States District Court for the Northern District of California or by mailing them to the Class Action Clerk, United States District Court for the Northern District of California, *Phillip Burton Federal Building* & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, and (c) be filed or postmarked on or before _____."

Only Participating Class Members have the right to object to the Settlement. Any objection must include supporting information including why you object, and any facts that support your

objection. Make sure you identify the Action as *Stewart et al. v Del Monte Foods, Inc.* and include your name, current address, and telephone number or email address, and sign the objection.

Alternatively, a Participating Class Member can object (or personally retain a lawyer to object at your own cost) by attending the Final Approval Hearing. You (or your attorney) should be ready to tell the Court what you object to, why you object, and any facts that support your objection. See Section 8 of this Notice (immediately below) for specifics regarding the Final Approval Hearing.

## 8.   CAN I ATTEND THE FINAL APPROVAL HEARING?

You can, but do not have to, attend the Final Approval Hearing virtually or in person on DATE at TIME in ADD. At the Hearing, the judge will decide whether to grant Final Approval of the Settlement and how much of the Gross Settlement will be paid to Class Counsel, Plaintiffs, and the Administrator. You can attend (or hire a lawyer to attend) either personally or virtually via ADD LINK. Check the Court's website for the most current information.

It is possible the Court will reschedule the Final Approval Hearing. You should check the Administrator's website at: SITE beforehand or contact Class Counsel to verify the date and time of the Final Approval Hearing.

## 9.   HOW CAN I GET MORE INFORMATION?

This notice summarizes the proposed settlement. For the precise terms of the settlement, please see the settlement agreement available at www._____.com, by contacting class counsel at at the contact information below, by accessing the Court docket in this case, for a fee, through the Court's Public Access to Court Electronic Records (PACER) system at https://ecf.cand.uscourts.gov, or by visiting the office of the Clerk of the Court for the United States District Court for the Northern District of California, *Phillip Burton Federal Building* & United States Courthouse, 450 Golden Gate Avenue, San Francisco, CA 94102, between 9:00 a.m. and 4:00 p.m., Monday through Friday, excluding Court holidays.


**PLEASE DO NOT TELEPHONE THE COURT OR THE COURT CLERK'S OFFICE TO INQUIRE ABOUT THIS SETTLEMENT.**

Class Counsel:
David Markham
Maggie Realin
Lisa Brevard
**THE MARKHAM LAW FIRM**
888 Prospect Street, Suite 200
La Jolla, CA 92037
Telephone: (619) 399-3995
Facsimile: (619) 615-2067
contact@markham-law.com

Settlement Administrator:

Name of Company: <mark>ADD</mark>
Email Address: <mark>ADD</mark>
Mailing Address: <mark>ADD</mark>
Telephone: <mark>ADD</mark>
Fax Number: <mark>ADD</mark>

## 10.  WHAT IF I LOSE MY SETTLEMENT CHECK?

If you lose or misplace your settlement check before cashing or depositing it, the Administrator will replace it as long as you request a replacement before the void date on the face of the original check.

## 11.  WHAT IF I CHANGE MY ADDRESS?

To receive your check, you should immediately notify the Administrator at the contact information in Section 9 if you move or otherwise change your mailing address.